**EXHIBIT 1 – COMMERCIAL LINE NOTE**

 Charter One

Borrower(s) Name and Address:

**PARTS FIT INDUSTRY CO.**

**1005 REPUBLIC DRIVE
UNITS- C & D
ADDISON, IL 60101**

Date of Agreement: 09/12/2006         Initial Rate: 8.250 %

Margin: 0 %   Maximum Rate: 18.00* %   Principal Amount: $ 400,000.00

*In New York and Vermont, the Maximum Rate for loans less than $250,000 is 16.00%.

☐ If checked here, this loan is guaranteed by the Small Business Administration ("SBA").

Lender:
Charter One Bank, N.A.
1215 Superior Avenue
Cleveland, OH 44114

## COMMERCIAL LINE NOTE

**PROMISE TO PAY:** FOR VALUE RECEIVED, the undersigned (the "Borrower" or "you") promises to pay to the order of the lender named above (the "Lender", "the Bank", "we", "us", or "our") the principal amount shown above, or such lesser amount as may be outstanding hereunder, plus interest, costs and fees as described herein.

**REVOLVING FEATURE:** This Note possesses a revolving feature. Upon satisfaction of the conditions set forth in this Note, and subject to any restrictions and limitations stated herein, Borrower shall be entitled to borrow up to the full principal amount of the Note and to repay and reborrow from time to time during the term of the Note.

Information with regard to any loans or advances or letters of credit issued under this Note shall be recorded and maintained by Lender in its internal records and such records shall be conclusive as to the information set forth therein absent manifest error. Lender's failure to record the date and amount of any loan or advance or letters of credit shall not limit or otherwise affect the obligations of the Borrower under this Note to repay the principal amount of the loans or advances or letters of credit together with all interest accruing thereon. Lender shall not be obligated to provide Borrower with a copy of the record on a periodic basis. Borrower shall be entitled to inspect or obtain a copy of the record during Lender's business hours.

**CONDITIONS FOR ADVANCES:** If there is no Default (as defined below) under this Note, Borrower shall be entitled to borrow monies under this Note (subject to the limitations described above) under the following conditions:

At the time of each advance requested by Borrower under this Note, the Borrower shall have complied with all of the terms, conditions and requirements of that certain Business Loan and Security Agreement between Borrower and Lender and dated the date hereof (the "Loan Agreement"). The Lender reserves the right to request evidence satisfactory to it that, at the time of each advance, there exists no Default or event of Default under this Note, the Loan Agreement or any document or instrument delivered pursuant to or in connection with this Note. Lender may terminate any further advances upon Default by Borrower or, absent Default, upon demand for payment of this Note. Lender may demand payment in full under this Note at any time, in its sole discretion and without cause.

**LETTERS OF CREDIT:** If there is no Default under this Note, Borrower shall be entitled to request that the Bank issue commercial or standby letters of credit under this Note (subject to the limitations described above) pursuant to the following conditions:

**(a) Issuance of Letters of Credit.** From time to time on any business day occurring prior to Default or demand hereunder, the Borrower may request the issuance of commercial or standby letters of credit (each a "Letter of Credit" and collectively, "Letters of Credit") for its own account in respect of obligations of the Borrower in stated face amounts (each such stated face amount not to be less than $1,000) requested by the Borrower on such day with an expiry date not later than one year from the date of such issuance; or extend the expiry date of an existing Letter of Credit previously issued hereunder to a date not later than one year from the date of such extension.

No issuance or extension of a Letter of Credit shall be made if, after giving effect thereto: (a) the aggregate face amount of all outstanding Letters of Credit, plus (b) the aggregate outstanding principal amount of all outstanding advances under this Note is greater than (c) the principal amount of this Note.

To request the issuance of a Letter of Credit (or the extension of an outstanding Letter of Credit) the Borrower shall hand deliver to the Bank a notice requesting the issuance of a Letter of Credit, or identifying the Letter of Credit to be extended, the date of issuance or extension, the date on which such Letter of Credit is to expire (which shall comply with the limitations set out above) as well as submitting the appropriate letter of credit application on the Bank's standard form.

Each Letter of Credit issued by the Bank shall be, in addition to the terms hereof, subject to the terms and conditions of any form of letter of credit application or other agreement submitted or entered into by the Borrower in connection with the issuance of any Letter of Credit. In the event of any inconsistency between the terms and conditions of this Note, the Loan Agreement, and the terms of any form letter of credit application or other agreement submitted or entered into by the Borrower in connection with the issuance of any Letter of Credit, the terms and condition of such letter of credit application or other agreement shall control.

**(b) Reimbursement.** If the Bank shall honor or otherwise make any disbursement in respect of a Letter of Credit, the Borrower shall reimburse the Bank in the full principal amount of such disbursement by paying to the Bank an amount equal to such disbursement not later than the close of business on the day such disbursement is made. Notwithstanding the foregoing, the Borrower may, subject to the terms and conditions of this Note, request that such reimbursement payment be financed by means of an advance hereunder. The Borrower acknowledges and agrees that the Bank is under no obligation to so honor any such request and that unless the Borrower shall reimburse the Bank in full on the date such disbursement is made, the unpaid amount thereof shall bear interest, for each day from and including the date of such un-reimbursed disbursement is made to but excluding the date that the Borrower reimburses such disbursement, at the rate per annum then applicable to advances hereunder.

**(c) Letter of Credit Fees.** The Borrower agrees to pay to the Bank a Letter of Credit fee in an amount equal to the then applicable interest rate for advances hereunder multiplied by the stated face amount of all Letters of Credit outstanding, such fee to be paid monthly in arrears in accordance with the payment scheduled set out below. The Borrower further agrees to pay to the Bank (i) on the date of (x) the issuance of each Letter of Credit, (y) each increase in the stated face amount thereof and (z) each extension (automatic or otherwise) of the stated expiry date thereof, an issuance fee as provided for in the letter of credit application or other agreement submitted or entered into by the Borrower in connection with such issuance, increase or extension, and (ii) all reasonable costs and expenses incurred by the Bank in connection with such Letter of Credit.

**(d) Cash Collateralization.** If the Bank shall make demand hereunder or upon the occurrence of any Default, on the day that the Borrower receives notices from the Bank demanding the deposit of cash collateral, the Borrower shall deposit in an account with the Bank, in the name of and for the benefit of the Bank, an amount in cash equal to the aggregate face amount of all Letters of Credit then outstanding. Such deposit shall be held by the Bank as collateral for the payment and performance of the obligations of the Borrower with respect to such outstanding Letters of Credit, this Note, the Loan Agreement, and any application or agreement submitted or entered into by the Borrower in connection with the issuance of any Letter of Credit. The Bank shall have exclusive dominion and control, including the exclusive right of withdrawal, over such account. Other than interest earned on the investment of such deposits, which such investments shall be at the option and sole discretion of the Bank and at the Borrower's risk and expense, such deposits shall not bear interest. Interest or profits, if any, on such investments shall accumulate in such account. Moneys in such account shall be applied by the Bank to reimburse the Bank for Letter of Credit disbursements for which it has not been reimbursed and, to the extent not so applied, shall be held for the satisfaction of the reimbursement obligations of the Borrower for outstanding Letters of Credit, or, if demand has been made hereunder, be applied to satisfy other obligations of the Borrower under this Note. If the Borrower is required to provide an amount of cash collateral hereunder as a result of the occurrence of a Default, and the Bank shall refrain from demanding payment hereunder, such amount (to the extent not applied as aforesaid) shall be returned to the Borrower within 3 business days after all Defaults have been cured or waived.

**(e) Foreign Exchange:** If there is no Default under this Note and the Lender and Borrower have entered into the Agreement Regarding Foreign Exchange Transactions (the "FX Agreement") which allows the Borrower from time to time to enter into transactions for the purchase of one currency in exchange for the sale of another currency (the "FX Transaction"), Borrower and Lender agree that in the event there are insufficient funds in Borrower's accounts with Lender to make payment to settle the FX Transaction, Lender and Borrower agree that Lender may provide an Advance to settle the FX Transaction. Such Advance shall be subject to the terms and conditions of this Agreement.

**VARIABLE INTEREST RATE:** Interest shall accrue on this Note beginning at the Initial Rate set forth above. This Note has a variable interest rate feature. The interest rate may change from time to time if the Index Rate identified below changes. Interest shall be calculated at a variable rate equal to the sum of the Margin shown above, plus the Index Rate. Any change in the interest rate resulting from a change in the Index Rate will be effective on the date of each change in the Index Rate. For SBA guaranteed loans, the interest rate will change on the first day of the calendar month following a change in the Index Rate. This interest rate change will not occur more often than once each month. Interest shall be computed on the basis of actual days elapsed over a 365-day year. In the event of a Default (as defined below), Lender may declare that Interest shall accrue on this Note at the Default Rate, as provided for in the section below regarding "Powers Upon Default."

**INDEX RATE:** The Index Rate for this Note shall be The Wall Street Journal Prime Rate. The "Wall Street Journal Prime Rate" is defined as the "Prime Rate" for domestic banks, as published in The Wall Street Journal, in the "Money Rates" section. If more than one such rate is published on any given day, the highest published rate shall be used to determine the Index Rate. The "Prime Rate" is not necessarily the lowest rate offered by Lender, nor by the lenders whose rates are surveyed by The Wall Street Journal. If The Wall Street Journal ceases to publish a "Prime Rate," the Lender may choose a substitute source for the Prime Rate or may choose a substitute index. If the Lender chooses a substitute index, it may also choose a substitute margin so that the new index and margin result in an interest rate substantially similar to the Interest Rate in effect at the time the Prime Rate ceases to be published in The Wall Street Journal.

**MAXIMUM RATE:** The interest rate on this Note shall not exceed the Maximum Rate set forth above.

**PAYMENT SCHEDULE:** This Note is payable ON DEMAND. Until demand is made, Borrower shall pay the principal and interest according to the following schedule:

Borrower must make regular monthly payments beginning one month from the date hereof and on the same day of each month thereafter, in the following amounts:

☒ If the box at the beginning of this paragraph is checked, Borrower's regular monthly payments will be equal to the sum of (a) accrued interest and any other charges posted by Lender at the close of the billing cycle, plus (b) any amount which is past due, plus (c) any amount by which the outstanding principal balance under this Note exceeds the maximum principal amount of this Note (set forth at the beginning of this Note). This minimum monthly payment will not reduce the principal that is outstanding under this Note, and will result in greater expenses over the life of this Note. In addition to the minimum monthly payment set forth above, Borrower agrees that at least once during each 12 consecutive calendar month period (beginning on the date of this Note) Borrower will reduce, for 30 consecutive days, the outstanding principal balance of this Note to not more than fifty percent (50%) of the highest outstanding principal balance under this Note for the preceding 12 calendar months.

Unless the box at the beginning of the preceding paragraph has been checked, Borrower's regular monthly payment will be equal to the sum of (a) accrued interest and any other charges posted by Lender at the close of the billing cycle, plus (b) principal in the minimum amount of (i) $200.00 or (ii) two percent (2%) of the outstanding principal balance at the close of the billing cycle, whichever is greater (however, the minimum payment will never exceed the entire amount outstanding), plus (c) any amount which is past due, plus (d) any amount by which the outstanding principal balance of this Note exceeds the maximum principal amount of this Note (set forth at the beginning of this Note).

If you have so indicated on the Application and have completed an authorization on the form we provided to you, you authorize us to debit your business checking account with us for all sums (including, without limitation, principal, interest and fees) payable under this Note and the Loan Documents (as defined below); provided, however, that this provision shall not obligate us to create or allow any overdraft, and further provided that such authority shall not relieve you of the obligation to assure that payments are made when due if there are not sufficient good funds in your account. You understand that in exchange for your authorization to deduct your payments from your checking account we have reduced the interest rate payable under this Note by one percent (1%). If you close your checking account, if you revoke your authorization to debit payments from your checking account, or if automatic payments are otherwise terminated for any reason, we have the right to increase the Margin disclosed at the beginning of this Note by one percent (1%) without any prior notice to you.

Unless payments are made by automatic debit of your checking account, you must make payments to Lender at the address on the billing statement in lawful currency of the United States of America.

If Borrower wants to pay the outstanding balance of this Note *in full* with a check or similar instrument that has special notations or instructions on it or with it, *but not terminate this Note*, Borrower must send the payment (including special notations or instructions) to the address for such payments listed on the billing statement.

If Borrower wants to pay the outstanding balance of this Note *in full* with a check or similar instrument that has special notations or instructions on it or with it, *and terminate this Note*, Borrower must send the payment (including special notations or instructions) to the address for such payments listed on the billing statement.

If payment in full is received at any other address, (i) Lender may ignore any special notations or instructions, and (ii) Lender's crediting any such check or other instrument to the Credit Line does not mean that Lender has agreed to the special notations or instructions.

**REQUESTING ADVANCES:** You may request an advance on this Note by using the special loan checks we will give you. The following rules apply to your use of special loan checks:

**a) Lost Or Stolen Special Loan Checks.** You agree to tell us if special loan checks are lost or stolen, or if you believe someone is taking advances on this Note without your permission. The fastest way to notify us is by calling us at 1-800-4-BUSINESS.

**b) Forged Special Loan Checks.** You agree that we do not have to pay any of your special loan checks if we believe the signature on the check has been forged, unless you tell us to.

**c) Postdated Special Loan Checks.** If you date a special loan check with a date that is later than the date on which you actually wrote the special loan check, you agree that we may pay the special loan check, even if we pay it or post it to the principal balance of this Note on a date which is earlier than the date on the special loan check.

**d) Stopping Payment on a Special Loan Check.** You can ask us to stop payment on any special loan check you have written that has not been paid by calling us at the telephone number shown on your statement. The stop payment would be effective 24 hours after we are in receipt of your request. You will receive a written confirmation from us that the stop has been placed. You can cancel a stop payment by notifying us in writing.

**e) We Are Not Liable.** We will not be liable if anyone fails to honor a special loan check written by you.

**f) Paying Special Loan Checks in Excess of Your Credit Limit.** We do not have to pay any special loan check that would cause the principal balance of this Note to exceed the Principal Amount of this Note. However, we may do so if we choose.

**g) Paying Special Loan Checks After Termination.** We will not pay any additional special loan checks presented to us for payment after we send you notice of termination of this Note. If you terminate this Note, you will be responsible for paying any additional advances we make to pay special loan checks which are presented to us for payment before we have had a reasonable amount of time to implement your termination notice. Once we have implemented your termination notice, we will not pay any additional special loan checks presented to us for payment.

**PREPAYMENT:** This Note may be prepaid in part or in full at any time without penalty.

**LATE FEE:** If any payment of principal or interest due hereunder is not paid within ten (10) days of the due date, Lender may require Borrower to pay a late fee equal to five percent (5%) of the overdue amount or $35.00, whichever is greater, in addition to and not in lieu of further accrual of interest on any overdue amount.

**ANNUAL FEE:** On each yearly anniversary of the date of this Note, you will be billed for the Annual Fee of $150 which shall not be subject to any refund upon termination.

**SECURITY:** This Note is secured by all collateral described in the Loan Agreement, together with all securities or other property of Borrower now or hereafter held by Lender and all deposits (other than IRA accounts) of Borrower held by Lender. Borrower gives Lender an express right of setoff against any such deposit accounts.

**BUSINESS LOAN AND SECURITY AGREEMENT:** This Note is subject to the terms and entitled to the benefits of the Loan Agreement. In the event there is any inconsistency between the provisions of this Note and the provisions of the Loan Agreement, the provisions of this Note shall govern. This Note, the Loan Agreement, and every other document executed in connection therewith are referred to in this Note as the "Loan Documents." Borrower's obligations under the Loan Documents are referred to in this Note as the "Obligations".

**EVENTS OF DEFAULT:** This Note is payable on demand. The inclusion of events of Default hereunder shall not limit Lender's right to demand payment in its sole discretion. The following shall be events of default under this Note (each referred to herein as a "Default"):

(1) Failure by Borrower, or by any Co-Obligor, endorser, guarantor or surety for or under any of the Obligations (each referred to herein as a "Co-Obligor"), to make full and prompt payment when due, of any amount required to be paid to Lender under any of the Loan Documents or any other agreement;

(2) Failure by Borrower or any Co-Obligor to perform, keep or observe any other term, provision, condition, covenant, agreement, warranty or representation contained in any of the Loan Documents or any other agreement with or in favor of Lender, which failure continues for ten (10) days after notice thereof by Lender to the person or entity required to perform, keep or observe such term, provision, condition, covenant, agreement, warranty or representation;

(3) If any representation, statement, report or certificate made or delivered by Borrower or any Co-Obligor is false or incorrect in any material respect when made or delivered;

(4) If any attachment, trustee process, lien, execution, levy, injunction, or receivership issued or made against the Borrower, any Co-Obligor or any Collateral securing the Obligations (referred to herein as "Collateral") is not removed within thirty (30) days or if any final judgment and execution issued against Borrower or any Co-Obligor remains unsatisfied for thirty (30) days;

(5) The entry of a decree or order for relief with respect to the Borrower or any Co-Obligor in an involuntary case under the federal bankruptcy law, as now or hereafter constituted, or any other applicable federal or state bankruptcy, insolvency or other similar law, or appointing a receiver, liquidator, trustee, custodian (or similar official) of or for the Borrower or any Co-Obligor, or ordering the winding-up or liquidation of its affairs which is not promptly contested and released or discharged within sixty (60) days;

(6) The commencement by the Borrower or any Co-Obligor of a voluntary case under the federal bankruptcy law, as now constituted or hereafter amended, or any other applicable federal or state bankruptcy, insolvency or other similar law, or the consent by Borrower or any Co-Obligor to the appointment of or taking possession by a receiver, liquidator, trustee, custodian (or other similar official) of or for the Borrower or any Co-Obligor or for any substantial part of its property, or the making by Borrower or any Co-Obligor of any assignment for the benefit of creditors, or the insolvency or the failure of the Borrower or any Co-Obligor generally to pay its debts as such debt become due, or the taking of action by the Borrower or any Co-Obligor in furtherance of any of the foregoing;

(7) Loss or destruction of or substantial damage to any material portion of any Collateral for this Note;

(8) Default which has not been cured during any applicable cure period in the prompt payment, performance or observance of any term, provision, condition, covenant, warranty or representation set forth in any mortgage, lien or encumbrance affecting any Collateral for this Note, whether or not such mortgage, lien or encumbrance is senior or junior to Lender's interest therein and whether or not such mortgage, lien or encumbrance has been consented to by Lender, provided, however, that nothing herein shall be deemed to be a consent by Lender, implied or otherwise, to the granting of any mortgage, lien or encumbrance on the Collateral; or

(9) Such a change in the condition or affairs (financial or otherwise) of the Borrower or any Co-Obligor, or decline in the value of the Collateral as, in the opinion of the Lender, materially impairs the Lender's security or increases its risk or if the Lender in good faith deems itself insecure.

Case: 1:10-cv-00769 Document #: 1-2 Filed: 02/04/10 Page 7 of 8 PageID #:18

Page 6

**POWERS UPON DEFAULT:** Upon the occurrence of any Default or at any time thereafter, Lender may, at its option, without notice or demand, do any one or more of the following, in addition to any other right or remedy that Lender may have at law or in equity or given to Lender under any of the Loan Documents, all of which are hereby authorized by Borrower:

(1) Declare the Obligations immediately due and payable;

(2) Cease advancing money or extending credit to or for the benefit of the Borrower under any agreement;

(3) Set-off against any and all deposits, accounts, certificate of deposit balances, claims, or other sums at any time credited by or due from the Lender to the Borrower and against all other property of Borrower in the possession of Lender or under its control;

(4) Realize immediately upon any Collateral;

(5) Declare that Interest shall accrue on this Note at a rate (the "Default Rate") equal to the lesser of (i) the sum of the Index Rate identified below, plus the Margin shown above, plus four percent (4%); and (ii) the Maximum Rate set forth at the beginning of this Note.

**COLLECTION EXPENSES:** The Borrower agrees to pay all actual costs of collection and attempted collection, including, without limitation: (1) those expenses incurred or paid to protect, preserve, collect, lease, sell, repair, improve, advertise, locate, take possession of, liquidate or otherwise deal with any Collateral for this Note, (2) expenses of dealing with any person or entity in any bankruptcy proceeding, (3) all out-of-pocket expenses incurred by the Lender for the Lender's attorney and paralegal fees, disbursements, and costs, all at such rates and with respect to such services as the Lender in its sole discretion may elect to pay (as such rates may vary from time to time during the course of the performance of such services) including the costs of attorneys who are employees of the Lender, and (4) the costs of appraisers, engineers, investment bankers, environmental consultants and other experts that may be retained by the Lender in connection with such collection efforts. Such costs will be added to the unpaid balance of the loan.

**WAIVER OF RIGHTS:** The Borrower waives the rights of demand, protest, notice of acceptance of this Note, notice of default or dishonor, presentment, notice of loans made, credit extended, collateral received or delivered or other action taken by the Lender hereunder and all other demands and notices of any description.

**MULTIPLE BORROWERS:** In the event that the word "Borrower" refers to more than one person or entity, all representations and obligations under this Note shall be joint and several.

**LENDER'S RIGHTS:** The Lender shall not be deemed to have waived any of its rights under this Note or otherwise unless such waiver is in writing and signed by the Lender. Lender's failure to require strict performance of the terms, covenants and agreements of this Note or any other of the Loan Documents, or any delay or omission on the part of the Lender in exercising any right, or any acceptance of partial or adequate payment or performance shall not waive, affect or diminish such right or Borrower's duty of compliance and performance therewith. A waiver on any one occasion shall not be construed as a bar to or waiver of the same or any other right on the same or any future occasion. All rights and remedies of the Lender under this Note or any other of the Loan Documents, shall be cumulative and may be exercised singularly or concurrently. This Note may be negotiated, extended or renewed by the Lender without releasing the Borrower or any Co-Obligor.

**GOVERNING LAW; SEVERABILITY:** This Note shall be construed in all respects in accordance with, and governed by, the federal laws of the United States of America and the State of Ohio (the "State"), to the extent such laws are not preempted. Wherever possible, each provision of this Note shall be interpreted in such manner as to be effective and valid under applicable law, but if any provisions of this Note shall be prohibited by or invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Note. This Note has been delivered to Lender and accepted by Lender in the State. If there is a lawsuit involving this Note, Borrower hereby irrevocably submits to the jurisdiction of the courts of the State (and the federal courts located in the State).

**MODIFICATION:** This Note may not be altered or amended except by an agreement in writing signed by both Lender and Borrower.

**APPLICATION OF PAYMENT:** Borrower irrevocably waives the right to direct the application of any and all payments at any time or times hereafter received by Lender from Borrower, or from any other source, and Borrower does hereby irrevocably agree that Lender shall have the continuing exclusive right to apply and reapply any and all payments received at any time or times hereafter against the Obligations in such manner as Lender may deem advisable.

**ASSIGNMENT; SUCCESSORS AND ASSIGNS:** Borrower shall not be entitled to assign any of its rights or obligations under this Note without Lender's prior written consent. Lender shall be entitled to assign some or all of its rights under this Note without notice to or consent of Borrower. This Note shall be binding upon and inure to the benefit of Borrower, Lender and their respective successors, assigns, trustees, receivers, administrators, personal representatives, legatees and devisees.

**WAIVER OF JURY TRIAL:** LENDER AND BORROWER EXPRESSLY AND VOLUNTARILY WAIVE ANY AND ALL RIGHTS, WHETHER ARISING UNDER THE UNITED STATES OR ANY STATE CONSTITUTION, ANY RULES OF CIVIL PROCEDURE, COMMON LAW OR OTHERWISE, TO DEMAND A TRIAL BY JURY IN ANY ACTION, LAWSUIT, PROCEEDING, COUNTERCLAIM OR ANY OTHER LITIGATION PROCEDURE BASED UPON, OR ARISING OUT OF, THIS NOTE OR THE LOAN DOCUMENTS, ANY AGREEMENTS ARISING UNDER OR RELATING TO THIS NOTE, ANY COLLATERAL SECURING THE OBLIGATIONS, OR THE DEALINGS OR RELATIONSHIPS BETWEEN OR AMONG LENDER AND BORROWER, OR ANY OF THEM. NEITHER LENDER NOR BORROWER, INCLUDING ANY ASSIGNEE OR SUCCESSOR OF LENDER OR BORROWER, SHALL SEEK A JURY TRIAL IN ANY SUCH ACTION. NEITHER LENDER NOR BORROWER SHALL SEEK TO CONSOLIDATE ANY SUCH ACTION WITH ANY OTHER ACTION WHEN A JURY TRIAL CANNOT BE OR HAS NOT BEEN WAIVED. THESE PROVISIONS SHALL BE SUBJECT TO NO EXCEPTIONS. NEITHER LENDER NOR BORROWER HAS IN ANY WAY AGREED WITH OR REPRESENTED TO THE OTHER THAT THE PROVISIONS OF THIS PARAGRAPH WILL NOT BE FULLY ENFORCED IN ALL INSTANCES.

BORROWER EXPRESSLY AGREES THAT THE INTEREST RATES SPECIFIED IN THIS NOTE SHALL BE THE APPLICABLE INTEREST RATES DUE (A) ON AMOUNTS OUTSTANDING DURING THE TERM OF THIS NOTE, SUBJECT TO THE MAXIMUM RATE PRESCRIBED ABOVE, AND (B) WITH RESPECT TO ANY AMOUNT OUTSTANDING ON AND AFTER THE MATURITY DATE OF THIS NOTE.

Witness

BORROWER
PARTS FIT INDUSTRY CO.

By: _____
Name: CHENG LO
Title: PRES.


Witness

BORROWER
PARTS FIT INDUSTRY CO.

By: _____
Name:
Title: