**EXHIBIT 2 –**
**BUSINESS LOAN AND SECURITY AGREEMENT**

 **Charter One**

Borrower(s) Name and Address:
**PARTS FIT INDUSTRY CO.**

**1005 REPUBLIC DRIVE**
**UNITS- C & D**
**ADDISON, IL 60101**
Date of Agreement:  __09/12/2006__

Jurisdiction of Organization (Principal Residence for Individuals):  __IL__

Chief Executive Office (full address):  __1005 REPUBLIC DRIVE UNITS- C & D ADDISON,__
__IL 60101__

Record Owner and Record Owner's Address (Fixtures):  __N/A__

Lender:

Charter One Bank, N.A.
1215 Superior Avenue
Cleveland, OH 44114

---

## BUSINESS LOAN AND SECURITY AGREEMENT

THIS BUSINESS LOAN AND SECURITY AGREEMENT as the same may be amended, modified or supplemented from time to time, ("Agreement") is made under seal as of the date shown above, by and between the Borrower and Lender shown above.

1. **DESCRIPTION OF THE LOAN.**

   a. <u>Loan Subject to Agreement.</u> This Agreement sets forth the terms and conditions governing one or more Loans (as defined in Section 2(j), below), evidenced by a promissory note of even date herewith, as the same may be amended, modified or supplemented from time to time (the "Note"). This Agreement shall also govern any other note or other loan or advance from Lender to Borrower, whether now existing or hereafter arising (collectively referred to as the "Obligations").

   b. <u>Security.</u> ☒  If checked here, the Obligations are secured by the Personal Property Collateral (as defined in Section 8, below) and the Security Agreement provisions in Section 8 apply to this Agreement.

   c. ☐  If checked here, the Obligations are secured by a Mortgage.  Security Agreement and Financing Statement dated as of even or near even date herewith granted to Lender covering certain property located at _____ (the "Mortgage").

   The term Collateral, as used in this Agreement, shall mean and include any property, real or personal, tangible or intangible, that is subject to the terms of the Mortgage, Section 8 of this Agreement, or any security interest granted to Lender in any of the Loan Documents (as defined in Section 2(h), below).

   d. <u>SBA Provisions.</u> ☐  If checked here, the SBA has authorized a guarantee of some or all of the Note from Borrower to Lender for the amount and under the terms stated in the SBA Authorization (the "Authorization") dated _____ In consideration of the premises in this Agreement and for other good and valuable consideration, Borrower and Lender agree as follows: subject to the terms and conditions of the Authorization and SBA's Participating Lender Rules as defined in the Guarantee Agreement between Lender and SBA, Lender agrees to make the Loan described in the Note if Borrower complies with the following "Borrower's Requirements." Borrower must: (a) provide Lender with all certifications, documents or other information Lender is required by the Authorization to obtain from Borrower or any third party; (b) execute the Note and any other documents required by Lender; and (c) do everything necessary for Lender to comply with the terms and conditions of the Authorization.

## 2. DEFINITIONS.

The following terms shall have the meanings set forth below:

a. Borrower. As defined above.

b. Default. See Section 6.

c. Default Rate. See Section 7.

d. Encumbrances. Any mortgage, pledge, security interest, lien or other charge or encumbrance, including the lien or retained security title of a conditional vendor upon or with respect to any of the property or assets of the Borrower or any of its subsidiaries.

e. Environmental Laws. Any judgment, decree, order, law, license, rule or regulation pertaining to environmental matters, including, without limitation, the Resource Conservation and Recovery Act, as amended ("RCRA"), the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, as amended ("SARA"), the Federal Solid Waste Disposal Act, as amended, the Federal Clean Water Act, as amended, the Federal Clean Air Act, as amended, the Toxic Substances Control Act, as amended, or any state or local statute, regulation, ordinance, order or decree relating to health, safety or protection of the environment.

f. Hazardous Substances. Any hazardous waste, as defined by 42 U.S.C. Section 6903(5), any hazardous substances as defined by 42 U.S.C., Section 9601(14), any pollutant or contaminant as defined by 42 U.S.C., Section 9601(33) or any toxic substances, oil or hazardous materials or other chemicals or substances regulated by any Environmental Laws.

g. Indebtedness. All obligations, fixed, contingent or otherwise, that in accordance with generally accepted accounting principles should be classified upon the obligor's balance sheet as liabilities, or to which reference should be made by footnotes thereto, including in any event and whether or not so classified: (a) all debt and similar monetary obligations, whether direct or indirect; (b) all liabilities secured by any mortgage, pledge, security interest, lien, charge, or other encumbrance existing on property owned or acquired subject thereto, whether or not the liability secured thereby shall have been assumed; and (c) all guarantees, endorsements and other contingent obligations whether direct or indirect in respect of indebtedness of others.

h. Investments. All expenditures made, all liabilities incurred and all contracts entered into (contingently or otherwise) for the acquisition of stock, securities or Indebtedness of, or for loans, advances, capital contributions or transfers of property to, or in respect of any guaranties (or other commitments as described under Indebtedness) or obligations of, any Person (including Borrower).

i. Loan Documents. This Agreement, the Note, any Security Documents, and any other documents relating to the Loan or the transactions contemplated hereby, as the same may be amended, modified or supplemented from time to time.

j. Loans. The loans to be made from time to time to the Borrower under this Agreement and the Note.

k. Obligations. The obligations of the Borrower under the Note, this Agreement, any other note or agreement to repay loans governed by this Agreement, any other Loan Document and under the Security Documents and each and every other obligation of Borrower to Lender, and however and whenever arising.

l. Permitted Encumbrances.

(i)     encumbrances in favor of Lender or any of its affiliates;

(ii)    encumbrances existing and disclosed to Lender as of the date of this Agreement;

(iii)   landlords' and lessors' liens in respect of rent not in default or liens in respect of pledges or deposits under workers' compensation, unemployment insurance, social security laws, or similar legislation or in connection with appeal and similar bonds incidental to litigation;

(iv)    mechanic's, laborer's, and materialmen's and similar liens, if the obligations secured by such liens are not then delinquent;

(v)     liens securing the performance of bids, tenders, contracts (other than for the payment of money); and statutory obligations incidental to the conduct of the Borrower's business and that do not in the aggregate materially detract from the value of its property or materially impair the use thereof in the operation of its business;

(vi)    judgment liens that shall not have been in existence for a period longer than 30 days after the creation thereof or, if a stay of execution shall have been obtained, for a period longer than 30 days after the expiration of such stay;

(vii)   encumbrances in respect of any purchase money obligations for tangible property used in Borrower's business, provided that any such Encumbrances shall not extend to property and assets of the Borrower or any subsidiary not financed by such a purchase money obligation;

(viii)   easements, rights of way, restrictions and other similar charges or Encumbrances relating to real property and not interfering in a material way with the ordinary conduct of Borrower's business; and

(ix)    encumbrances on any property or assets of the Borrower or any of its subsidiaries created in connection with the refinancing of Indebtedness secured by Permitted Encumbrances on such property, provided that the amount of Indebtedness secured by any such Encumbrance shall not be increased as a result of such refinancing and no such Encumbrances shall extend to property and assets of the Borrower or any such subsidiary not encumbered prior to any such refinancing.

m.   <u>Person</u>. An individual, firm, corporation, partnership, limited liability company, sole proprietorship, joint venture and any other legal form of entity.

n.   <u>Security Documents</u>. Any mortgage, security agreement, pledge agreement, guaranty and any other document securing the Obligations and all documents relating thereto, including, without limitation, UCC-1 financing statements, executed and delivered in connection therewith, as the same may be amended, modified or supplemented from time to time.

o.   <u>State.</u> The State or Commonwealth where Lender is located, as set forth in Lender's address, above.

**3. REPRESENTATIONS AND WARRANTIES.** In order to induce Lender to enter into this Agreement and to make the Loans, the Borrower, by signing below, makes each of the following representations and warranties to Lender:

a.   <u>Incorporation; Good Standing.</u> The Borrower (i) is duly organized and validly existing and in good standing under the laws of its jurisdiction of organization; (ii) has all requisite power to own its property and conduct its business as now conducted and as presently contemplated; and (iii) is in good standing as a foreign entity and is duly authorized to do business in each jurisdiction where such qualification is necessary except where a failure to be so qualified in such other jurisdiction would not have a materially adverse effect on the business, or financial condition or prospects of the Borrower.

b.   <u>Authorization.</u> The execution, delivery and performance of this Agreement and the other Loan Documents to which the Borrower is to become a party and the transactions contemplated hereby and thereby: (i) are within the authority of the Borrower, (ii) have been duly authorized by all necessary action and proceedings; (iii) do not conflict with or result in any breach or contravention of any provision of law, statute, rule or regulation to which the Borrower is subject or any judgment, order, writ, injunction, license or permit applicable to the Borrower, and (iv) do not conflict with any provision of the Borrower's organizational documents or other charter documents or bylaws of, or any agreement or other instrument binding upon, the Borrower.

c.   <u>Enforceability.</u> The execution and delivery of this Agreement and the other Loan Documents to which the Borrower is or is to become a party will result in valid and legally binding obligations of the Borrower, enforceable against the Borrower in accordance with the respective terms and provisions thereof. No Default exists under this Agreement nor under any Loan Document, nor does any condition exist which, with the passage of time or the giving of notice (or both), will ripen into a Default.

d.   <u>Governmental Approvals.</u> The execution, delivery and performance by the Borrower of the Agreement and the other Loan Documents and the transactions contemplated thereby do not require the approval or consent of, or filing with, any governmental agency or authority other than those already obtained and the filing of the Security Documents and related financing statements in the appropriate records office with respect thereto.

e. Litigation. There are no actions, suits, proceedings or investigations of any kind pending or threatened against the Borrower or any of its subsidiaries before any court, tribunal or administrative agency or board that, if adversely determined, might, either in any case or in the aggregate, materially adversely affect the properties, assets, financial condition, prospects or business of the Borrower or any of its subsidiaries or materially impair the right of the Borrower and its subsidiaries to carry on business substantially as now conducted by it, or result in any substantial liability not adequately covered by insurance, or for which adequate reserves are not maintained on the balance sheet of the Borrower, or which question the validity of this Agreement or any of the other Loan Documents, or any action taken or to be taken pursuant hereto or thereto.

f. No Materially Adverse Contracts, Etc. Neither the Borrower nor any of its subsidiaries is subject to any charter, corporate or other legal restriction, or any judgment, decree, order, rule or regulation that has or is expected in the future to have a materially adverse effect on the business, assets or financial condition of the Borrower or its subsidiaries. Neither the Borrower nor any of its subsidiaries is a party to any contract or agreement that has or is expected, in the judgment of the Borrower's officers, to have any materially adverse effect on the business of the Borrower or its subsidiaries.

g. Compliance With Other Instruments, Laws, Etc. Neither the Borrower nor any of its subsidiaries is in violation of any provision of its charter or other organizational documents, by-laws, or any agreement or instrument to which it may be subject or by which it or any of its properties may be bound or any decree, order, judgment, statute, license, rule or regulation, in any of the foregoing cases in a manner that could result in the imposition of substantial penalties or could materially and adversely affect the financial condition, assets, properties, prospects or business of the Borrower or its subsidiaries.

h. Title to Properties; Absence of Encumbrances. The Borrower and its subsidiaries have good and marketable title to all of the properties, assets and rights of every name and nature now purported to be owned by them, free from all Encumbrances except Permitted Encumbrances, and, except as so disclosed, free from all defects of title that might materially adversely affect such properties, assets or rights, taken as a whole.

i. Financial Statements. If the Borrower has furnished Lender its consolidated balance sheet and other financial statements, all such financial statements were prepared in accordance with generally accepted accounting principles applied in a consistent basis throughout the periods specified and present fairly the financial position of the Borrower and its subsidiaries as of such dates and the results of the operations of the Borrower and its subsidiaries for such periods. There are no liabilities, contingent or otherwise, not disclosed in such financial statements that, taken in the aggregate, could have a material adverse effect on the Borrower and its subsidiaries or any of their property.

j. Changes. Since the date of the most recent financial statements referred to in the preceding paragraph, there have been no changes in the assets, liabilities, financial condition, business or prospects of the Borrower or any of its subsidiaries other than changes in the ordinary course of business, the effect of which has not, in the aggregate, been materially adverse.

k. Taxes. The Borrower and each subsidiary have filed all federal, state and other tax returns required to be filed, and all taxes, assessments and other governmental charges due from the Borrower and each subsidiary have been fully paid. The Borrower and each of its subsidiaries have established on their books reserves adequate for the payment of all federal, state and other tax liabilities.

1.    <u>Environmental Matters</u>. In addition to the foregoing representations and warranties, the Borrower, by signing below, makes each of the following representations and warranties to Lender:

    (i)   <u>Licenses, Permits, Etc.</u> The Borrower and each of its subsidiaries have obtained all permits, licenses and other authorizations which are required under all Environmental Laws, except to the extent failure to have any such permit, license or authorization will not have a material adverse effect on the properties, assets, business, financial condition, prospects or operations of the Borrower and its subsidiaries. The Borrower and each of its subsidiaries are in compliance with the terms and conditions of all such permits, licenses and authorizations, and are also in compliance with all other limitations, restrictions, conditions, standards, prohibitions, requirements, obligations, schedules and timetables contained in any applicable Environmental Law or in any regulation, code, plan, order, decree, judgment, injunction, notice or demand letter issued, entered, promulgated or approved thereunder, except to the extent failure to comply will not have a material adverse effect on the properties, assets, business, financial condition, prospects or operations of the Borrower and its subsidiaries.

    (ii)   <u>Lack of Licenses, Permits, Etc.</u> No notice, notification, demand, request for information, citation, summons or order has been issued, no complaint has been filed, no penalty has been assessed and no investigation or review is pending or threatened by any governmental or other entity with respect to any alleged failure by the Borrower or any of its subsidiaries to have any permit, license or authorization required in connection with the conduct of its business or with respect to any Environmental Laws, including, without limitation, Environmental Laws relating to the generation, treatment, storage, recycling, disposal or release of any Hazardous Substances.

    (iii)   <u>Notifications</u>. To the best of the Borrower's knowledge no oral or written notification of a release of a Hazardous Substance has been filed by or on behalf of the Borrower or any of its subsidiaries with any governmental authority and no property now or previously owned, leased or used by the Borrower or any of its subsidiaries is listed or proposed for listing on the National Priorities List under CERCLA, or on any similar state list of sites requiring investigation or clean-up.

    (iv)   <u>Environmental Liens and Encumbrances</u>. There are no liens or encumbrances arising under or pursuant to any Environmental Laws on any of the real property or properties owned, leased or used by, the Borrower or any of its subsidiaries and no governmental actions have been taken or are in process which could subject any of such properties to such liens or encumbrances or, as a result of which the Borrower or any of its subsidiaries would be required to place any notice or restriction relating to the presence of Hazardous Substances at any property owned by it in any deed to such property.

    (v)   <u>Use of Property</u>. Neither Borrower nor any of its subsidiaries nor, to the best knowledge of the Borrower, any previous owner, tenant, occupant or user of any property owned, leased or used by the Borrower or any of its subsidiaries has: (i) engaged in or permitted any operations or activities upon, or any use or occupancy of such property, or any portion thereof, for the purpose of or in any way involving the handling, manufacture, treatment, storage, use, generation, release, discharge, refining, dumping or disposal (whether legal or illegal, accidental or intentional) of any Hazardous Substances on, under, in or about such property, except to the extent commonly used in day-to-day operations of such property and in such case only in compliance with all Environmental Laws, or (ii) transported any Hazardous Substances to, from or across such property except to the extent commonly used in day-to-day operations of such property and, in such case, in compliance with, all Environmental Laws; nor to the best knowledge of the Borrower have any Hazardous Substances migrated from other properties upon, about or beneath such property, nor, to the best knowledge of the Borrower, are any Hazardous Substances presently constructed, deposited, stored or otherwise located on, under, in or about such property except to the extent commonly used in day-to-day operations of such property and, in such case, in compliance with all Environmental Laws.

(vi)     This Agreement secures a loan for business or commercial purposes, and no part of the proceeds of the loan shall be used for personal, family or household purposes.

**4. AFFIRMATIVE COVENANTS.**  In order to induce Lender to enter into this Agreement, the Borrower, by signing below, makes each of the following affirmative covenants with Lender:

a.       Maintenance and Insurance.  The Borrower and its subsidiaries shall maintain its properties in good repair, working order and condition as required for the normal conduct of its business. The Borrower and its subsidiaries shall at all times maintain liability and casualty insurance with financially sound and reputable insurers in such amounts as the Borrower's officers in the exercise of their reasonable judgment deem to be adequate.  In the event of failure to provide and maintain insurance as herein provided, Lender may, at its option, provide such insurance and charge the amount thereof to the account of the Borrower or any of its subsidiaries with Lender.  The Borrower shall furnish to Lender certificates or other evidence, in form and substance satisfactory to Lender, of compliance with the foregoing insurance provisions.

b.       Taxes.  The Borrower shall pay or cause to be paid all taxes, assessments or governmental charges on or against it or any of its subsidiaries or their properties on or prior to the time when they become due; provided that this covenant shall not apply to any tax, assessment or charge:
 (i) that is being contested in good faith by appropriate proceedings, (ii) with respect to which adequate reserves have been established and are being maintained in accordance with generally accepted accounting principles, and (iii) that is not subject to enforcement by foreclosure or  execution of any lien securing such tax, assessment or charge while said contest is pending.

c.       Financial Information.  Upon Lender's request, the Borrower shall provide Lender with copies of each and every audited or reviewed financial statement prepared for Borrower as soon as the same are available.  The Borrower shall further provide any additional financial statements requested by Lender.

d.    ·    Inspection by Lender.  The Borrower shall permit Lender or its designee, at any reasonable time and upon reasonable notice (or if a Default shall have occurred and is continuing, at any time and without prior notice) to (i) visit and inspect the properties of the Borrower and its subsidiaries, (ii) examine and make copies of and take abstracts from the books and records of the Borrower and its subsidiaries, and (iii) discuss the affairs, finances and accounts of the Borrower and its subsidiaries with their appropriate officer, employees and accountants.

e.       Deposit Balances.  Borrower agrees to maintain a comprehensive deposit relationship with Lender including but not limited to the maintenance of all of the Borrower's operating accounts at Lender.  This covenant shall not be construed to require Borrower to purchase any non-depository services from Lender.

f.       Indemnity.  Borrower agrees to indemnify Lender and each of the Lender's directors, officers and employees and each other person, if any, who controls Lender, and to hold Lender and such other persons harmless from and against all losses, claims, damages, liabilities and expenses (including expenses of litigation or preparation therefor) which Lender or such other persons may incur or which may be asserted against Lender or such other persons in connection with or arising out of the matters referred to in this Agreement, including, without limitation, any liability or assertion of liability arising under any Environmental Law.

g.       Guaranties.  Borrower shall cause each owner of more than 20% of the equity interest in Borrower to unconditionally guarantee all Obligations.

**5. NEGATIVE COVENANTS.**  In order to induce Lender to enter into the Agreement, the Borrower, by signing below, makes each of the following negative covenants with Lender.

a.       Sale and Leaseback.  Neither the Borrower nor any of its subsidiaries shall enter into any arrangement, directly or indirectly, whereby it shall sell or transfer any property owned by it in order to lease such property or lease other property that the Borrower or any such subsidiary intends to use for substantially the same purpose as the property being sold or transferred.

b.       Encumbrances.  Neither the Borrower nor any of its subsidiaries shall create, incur, assume or suffer to exist any Encumbrances, or assign or otherwise convey any right to receive income, including the sale or discount of accounts receivable with or without recourse, except Permitted Encumbrances.

c.    <u>Transfer of Funds.</u> The Borrower will not make any loans, advances or payments of money, other than salaries, commissions and normal reimbursable expenses incurred in the ordinary course of the Borrower's business, to officers, directors, employees, stockholders or affiliates of the Borrower.

d.    <u>Merger; Consolidation; Sale or Lease of Assets.</u> Neither the Borrower nor any of its subsidiaries shall sell, lease or otherwise dispose of assets or properties (valued at the lower of cost or market), other than: (a) sales of inventory in the ordinary course of business, (b) sales of used assets being replaced in the ordinary course of business, and (c) sales of assets no longer required for the conduct of their business having a value less than five percent (5%) in the aggregate of consolidated net worth in any year, nor liquidate, merge or consolidate into or with any other person or entity, provided that any subsidiary of the Borrower may merge or consolidate into or with: (i) the Borrower if no Default has occurred and is continuing or would result from such merger and if the Borrower is the surviving company, or (ii) any other wholly-owned subsidiary of the Borrower if no Default has occurred and is continuing.

e.    <u>Equity Distributions.</u> The Borrower shall not pay any dividends on any class of its capital stock or make any other distribution or payment on account of or in redemption, retirement or purchase of such capital stock; provided that this paragraph shall not apply to the issuance, delivery or distribution by the Borrower of shares of its common stock pro rata to its existing shareholders. If the Borrower is an "S Corporation" as that term is defined in Section 1361 of Title 26 of the United State Code (the "Internal Revenue Code"); then within the first two months of each calendar year the Borrower may distribute up to thirty-five percent (35%) of its taxable income as defined in the applicable section(s) of the Internal Revenue Code for the previous year to its shareholders.

f.    <u>Investments.</u> The Borrower will not, directly or indirectly, redeem, invest in, purchase or otherwise acquire, or contract to purchase or otherwise acquire, the securities or stock of any entity, including without limitation, the Borrower's own securities or stock in the property, assets, or business of any other person, firm, partnership or corporation.

g.    <u>Indebtedness.</u> Neither the Borrower nor any of its subsidiaries shall create, incur, assume, guarantee or be or remain liable with respect to any Indebtedness other than the following:

    (i)   Indebtedness of the Borrower or any of its subsidiaries to Lender or any of its affiliates;

    (ii)   Indebtedness existing as of the date of this Agreement and previously disclosed to Lender, in writing, in Borrower's financial statements;

    (iii)   guarantees in favor of Lender or any of its affiliates;

    (iv)   guarantees resulting from the endorsement of negotiable instruments for collection in the ordinary course of business;

    (v)   guarantees with respect to surety, appeal, performance and return-of-money and other similar obligations incurred in the ordinary course of business (exclusive of obligations for the payment of borrowed money); and

    (vi)   guarantees of normal trade debt relating to the acquisition of goods and supplies.

h.    <u>Leases.</u> Neither the Borrower nor any of its subsidiaries shall during any fiscal year enter into any leases of real or personal property as lessee.

**6. EVENTS OF DEFAULT:** The following shall be events of default under this Agreement (each referred to herein as a "Default"):

a.    Failure by Borrower, or by any co-obligor, endorser, guarantor or surety for or under any of the Obligations (each referred to herein as a "Co-Obligor"), to make full and prompt payment when due, of any amount required to be paid to Lender under any of the Loan Documents or any other agreement;

b.    Failure by Borrower or any Co-Obligor to perform, keep or observe any other term, provision, condition, covenant, agreement, warranty or representation contained in any of the Loan Documents or any other agreement with or in favor of Lender, which failure continues for ten (10) days after notice thereof by Lender to the person or entity required to perform, keep or observe such term, provision, condition, covenant, agreement, warranty or representation;

c.   If any representation, statement, report or certificate made or delivered by Borrower or any Co-Obligor is false or incorrect in any material respect when made or delivered;

d.   If any attachment, trustee process, lien, execution, levy, injunction, or receivership issued or made against the Borrower, any Co-Obligor or any Collateral is not removed within thirty (30) days or if any final judgment and execution issued against Borrower or any Co-Obligor remains unsatisfied for thirty (30) days;

e.   The entry of a decree or order for relief with respect to the Borrower or any Co-Obligor in an involuntary case under the federal bankruptcy law, as now or hereafter constituted, or any other applicable federal or state bankruptcy, insolvency or other similar law, or appointing a receiver, liquidator, trustee, custodian (or similar official) of or for the Borrower or any Co-Obligor, or ordering the winding-up or liquidation of its affairs which is not promptly contested and released or discharged within sixty (60) days;

f.   The commencement by the Borrower or any Co-Obligor of a voluntary case under the federal bankruptcy law, as now constituted or hereafter amended, or any other applicable federal or state bankruptcy, insolvency or other similar law, or the consent by Borrower or any Co-Obligor to the appointment of or taking possession by a receiver, liquidator, trustee, custodian (or similar official) of or for the Borrower or any Co-Obligor for any substantial part of its property, or the making by Borrower or any Co-Obligor of any assignment for the benefit of creditors, or the insolvency or the failure of the Borrower or any Co-Obligor generally to pay its debts as such debt become due, or the taking of action by the Borrower or any Co-Obligor in furtherance of any of the foregoing;

g.   Loss or destruction of or substantial damage to any material portion of the Collateral;

h.   Default which has not been cured during any applicable cure period in the prompt payment, performance or observance of any term, provision, condition, covenant, warranty or representation set forth in any mortgage, lien or encumbrance affecting the Collateral, whether or not such mortgage, lien or encumbrance is senior or junior to Lender's interest therein and whether or not such mortgage, lien or encumbrance has been consented to by Lender, provided, however, that nothing herein shall be deemed to be a consent by Lender, implied or otherwise, to the granting of any mortgage, lien or encumbrance on the Collateral;

i.   Such a change in the condition or affairs (financial or otherwise) of the Borrower or any Co-Obligor, or decline in the value of the Collateral as, in the opinion of the Lender, materially impairs the Lender's security or increases its risk or if the Lender in good faith deems itself insecure; or

j.   Any revocation or termination of any Guaranty.

**7.  POWERS UPON DEFAULT**: Upon the occurrence of any Default or at any time thereafter, Lender may, at its option, without notice or demand, do any one or more of the following, in addition to any other right or remedy that Lender may have at law or in equity or given to Lender under any of the Loan Documents, all of which are hereby authorized by Borrower:

a.   Declare the Obligations immediately due and payable;

b.   Cease advancing money or extending credit to or for the benefit of the Borrower under any agreement;

c.   Set-off against any and all deposits, accounts, certificate of deposit balances, claims, or other sums at any time credited by or due from the Lender to the Borrower and against all other property of Borrower in the possession of Lender or under its control;

d.   Realize immediately upon any Collateral;

e.   Declare that interest shall accrue on the Obligations at a rate (the "Default Rate") equal to the lesser of (i) the sum of the applicable interest rate under the releveant Obligation, plus four percent (4%) and (ii) the maximum interest rate imposed by applicable law.

**8.  SECURITY AGREEMENT**: This Section 8 applies if the "security" box relating to Personal Property Collateral in Section 1(b) is checked.

a.   **Definitions**: The following additional capitalized terms used in this Section 8 shall have the meanings ascribed to them below. Except as otherwise defined herein, terms defined in the Uniform Commercial Code of the State shall have the meanings set forth therein.

(i)     "Accounts" means all of the Borrower's accounts, accounts receivable, health care insurance receivables and any and all rights of Borrower to payment for goods sold or leased, for services, rendered or for other value provided, whether in the form of instruments, chattel paper, documents, general intangibles or otherwise, and all renewals thereof and substitutions therefor, and any other obligations owed to Borrower, however evidenced, together with any guaranties, liens, letters of credit, and chattel paper evidencing or relating to any of the foregoing, and all other property constituting "accounts" as such term is defined in the Uniform Commercial Code of the State.

(ii)    "Equipment" means any and all of Borrower's equipment, machinery, furniture, furnishings, trade fixtures, fixtures, motor vehicles and all other tangible personal property of the Borrower (exclusive of Inventory), including spare parts, all whether now owned or hereafter acquired, together with any and all additions and accessions thereto and replacements thereof, as well as all of Borrower's right, title and interest in and to any such goods as may be now or hereafter held or used by or other agreements under which Borrower is or may become entitled to the use and possession thereof, and all other property constituting "equipment" as such term is defined in the Uniform Commercial Code of the State.

(iii)   "General Intangibles" means and refers to any and all of Borrower's general intangibles and any and all other personal property of Borrower, other than Accounts, Inventory and Equipment, including, without limitation, payment intangibles, all tax refunds of every kind and nature to which Borrower is now or hereafter may become entitled, all other refunds, goodwill, trade secrets, computer programs, customer lists, trade names, copyrights, trademarks, patents, choses in action, all rights of stoppage in transit, replevin and reclamation, all indemnity agreements, guaranties, insurance policies, other contractual rights of whatever kind or nature, and all moneys, securities and other properties now or hereafter held or received by or in transit to the Lender, whether for safekeeping, pledge, custody, transmission, collection or otherwise, and all credits and balances of Borrower with Lender at any time existing, and all other property constituting "general intangibles" as such term is defined in the Uniform Commercial Code of the State and includes payment intangibles. The term also includes all of Borrower's deposit accounts and investment property.

(iv)    "Inventory" means and includes any and all of Borrower's inventory, now owned or hereafter acquired, goods held by and intended for sale or lease by Borrower or to be furnished by Borrower under contracts of service and all raw materials, goods in process, finished goods, materials and supplies of every nature used or usable in connection with the manufacturer, packing, shipping, advertising, selling, leasing or furnishing of such goods or in connection with Borrower's business generally, all goods used or consumed in Borrower's business, and all goods in transit and returned, repossessed, reclaimed and rejected goods of whatever kind, and all other property constituting "inventory" as such term is defined in the Uniform Commercial Code of the State.

(v)     "Records" means all books of account and records of every kind and nature of Borrower or of any subsidiary of Borrower, now existing of hereafter arising or created, in whatever form, including, without limitation, books, records, ledger cards, all electronically recorded data, all computer programs and computer software, tapes, disks, manuals, spreadsheets, all documentation pertaining to and contractual rights with any services bureaus, and all books and records, relating to Borrower, its business, operations, finances or properties.

(vi)    "Fixtures" means all property of Borrower now or hereafter affixed to real estate, including any and all (i) fixtures and improvements of Borrower now owned or hereafter acquired, nor or hereafter erected, constructed, situated or affixed on or to any real property now or hereafter owned, leased, occupied or used by Borrower; and (ii) machinery, equipment, furniture, furnishings, trade fixtures or inventory of Borrower now owned or hereafter acquired, now or hereafter affixed to any of the aforementioned real property; in each case together with any and all additions and accessions thereto, replacements therefore and products thereof.

b.    **Security Agreement:**  To secure the Borrower's Obligations, the Borrower hereby gives the Lender a security interest in all Accounts, Inventory, Equipment, General Intangibles, Fixtures, Records, chattel paper, documents, investment property, deposit accounts, letter-of-credit rights, commercial tort claims and instruments, whether now owned or hereafter arising, and the proceeds, including insurance proceeds, and products thereof (the "Personal Property Collateral"):

c.    **Representations, Warranties and Covenants:**  The Borrower represents, covenants and warrants to and with the Lender, on a continuing basis, as follows:

(i) The Borrower keeps its records concerning the Personal Property Collateral and the location where the Personal Property Collateral will be used, kept or stored is at Borrower's address shown above. The Borrower shall immediately notify the Lender in writing of any change of said address(es). The record owner of the real estate where the Personal Property Collateral will be used, kept or stored is the "Record Owner" above. The address of the Record Owner is correctly set forth above. The exact name of the Borrower is set forth above. The Borrower does not and has not done business in any name other than the name of the Borrower set forth in this Agreement. If the Borrower is not a natural person (individual), the jurisdiction of organization of the Borrower is correctly set forth above. The location and address of the Borrower's chief executive office is correctly set forth above. Except as set forth on Exhibit A, the Borrower has no other place of business in the State. If the Borrower is an individual, the principal residence of the Borrower is correctly set forth above. The Borrower shall not change its name, jurisdiction of organization, principal residence, or location of chief executive office without giving 30 days advance written notice to Lender.

(ii) No portion of the Personal Property Collateral shall be attached or affixed to real estate unless the Lender expressly consents in writing prior to such attachment. Upon request by the Lender, the Borrower will furnish appropriate waivers or disclaimers, signed by all persons having any interest in the real estate on which Personal Property Collateral may be located, or any interest in the Personal Property Collateral which is or may be prior to the Lender's interest.

(iii) If the Personal Property Collateral includes a pledge of securities or investment property, the Borrower agrees to deliver all certificates to the Lender, to sign any proxies, powers-of-attorney, account control agreements and assignments required by the Lender to protect its interest in the securities, that all dividends, interest, exchanges, substitutions, and replacements of and from the securities are also part of the Personal Property Collateral and will be delivered to the Lender, that upon default the Lender may transfer the securities to its own name, that the Lender, in its sole discretion, may choose to exercise any and all rights of the Borrower in the Personal Property Collateral in order to protect the value of the security, and that the Lender shall have no duty regarding the Personal Property Collateral except to exercise reasonable care to assure its safe custody.

(iv) The Borrower will keep the Personal Property Collateral insured at all times against such risks and in such form and amounts as the Lender may require, with loss thereon payable to Lender as mortgagee/secured party. If the Borrower fails to maintain such insurance, then Lender may procure such insurance and add the costs and expenses relating thereto to the Borrower's obligations, to be repaid upon demand with interest at the highest rate applicable to the Borrower's Obligations. The Borrower hereby irrevocably appoints Lender its exclusive agent and attorney-in-fact to make, adjust and settle claims in connection with any such insurance, to receive and endorse any checks thereunder and, in the sole discretion of Lender, to apply the proceeds thereof to the obligations secured hereby.

(v) Except for any security interest held by the Lender or with prior written consent of the Lender, the Borrower is and shall continue to be the owner of all Personal Property Collateral free and clear of other legal claims.

(vi) The Borrower shall not, without prior written consent of the Lender and other than Permitted Encumbrances, create, permit or suffer to exist any security interest, lien, attachment, trustee process or execution whatsoever covering or against the Personal Property Collateral and shall pay all taxes and similar governmental liabilities when due.

(vii) The Borrower will not sell, lease, license or transfer any of the Personal Property Collateral or any interest therein without the prior written consent of the Lender, except for sales or leases of inventory in the ordinary course of business on usual trade terms, which shall not include a transfer in partial or total satisfaction of debt.

(viii) Borrower hereby authorizes Lender to file financing statements naming Borrower as debtor and describing the Personal Property Collateral in both general and specific terms, and to take all such further acts as Lender may deem necessary or appropriate to perfect the security interest provided herein. Lender shall have the right to perfect by possession any security interest not properly perfected by such filing. Borrower will cooperate with Lender in obtaining control agreements in form and substance satisfactory to Lender with respect to any Personal Property Collateral consisting of deposit accounts or investment property.

(ix) The Borrower shall do such things and execute and deliver such documents and instruments as the Lender may request to further assure or protect the Lender's rights hereunder, including without limitation obtaining financing statements between itself and any account debtor concerning goods covered by chattel paper, with the Lender named as assignee, including Lender's address. Borrower shall assure that no financing statement naming Borrower as debtor is or remains filed in any UCC records in the State of any other state or jurisdiction, without the express written consent of Lender.

d.    **Additional Powers Upon Default**:  In addition to powers provided above, upon the occurrence of any Default or at any time thereafter, Lender may, at its option, without notice or demand, do any one or more of the following, in addition to any other right or remedy that Lender may have at law or in equity or given to Lender under any of the Loan Documents, all of which are hereby authorized by Borrower:

(i)    Exercise all of the remedies of a secured party under the Uniform Commercial Code as now or hereafter in effect in the State, and such further remedies as may from time to time hereafter be provided for a secured party;

(ii)    Take possession of the Personal Property Collateral or any part thereof, and perform any acts Lender deems necessary or proper to conserve the Personal Property Collateral, and collect, receive and enforce all Accounts, General Intangibles, and proceeds and profits thereof, including those past due as well as those accruing thereafter, and use, manage, operate and control the Personal Property Collateral, and have a receiver appointed to enter and take possession of the Personal Property Collateral, collect the Accounts, General Intangibles, and proceeds and profits thereof and apply the same as the court may direct.  The expense (including receiver's fees, counsel fees, costs and agent's compensation) incurred pursuant to the powers herein contained shall be added to the Obligations secured hereby.  Lender shall (after payment of all costs and expenses incurred) apply such proceeds and profits received by it on the Obligations in such order as Lender determines.  Lender shall be liable to account only for such proceeds and profits as are actually received by Lender;

(iii)    Cure any default for the account of Borrower, and, to the fullest extent permissible under law, apply any funds credited by or due from Borrower to Lender against the same (without any obligation first to enforce any other rights of the Lender, including, without limitation, any rights under the Loan Documents or this Agreement, or any guarantee thereof, and without prejudice to any such rights).  Without limiting the generality of the foregoing, Borrower hereby authorizes Lender to pay all taxes, with interest, costs and charges accrued thereon, which may at any time be a lien upon the Personal Property Collateral, or any part thereof; to pay the premiums for any insurance required hereunder; to incur and pay reasonable expenses in protecting its rights hereunder and the security hereby granted; to pay any balance due under any security agreement on any fixtures and equipment included as a part of the Personal Property Collateral; and the payment of all amounts so incurred shall be secured hereby as fully and effectually as any other obligation of Borrower secured hereby and shall bear interest until paid at the highest rate applicable to the Borrower's Obligations.  To the fullest extent permissible under law, Lender may apply to any of these purposes or to the repayment of any amounts so paid by Lender any sums paid under the Loan Documents or this Agreement by Borrower as interest or otherwise;

(iv)    Sell or otherwise dispose of the Personal Property Collateral (in its then condition or after repair, further construction and/or preparation thereof, and Lender shall have no obligation to make such repair, construction and/or preparation. utilizing in connection therewith any of Borrower's assets, without charge or liability to Borrower therefor) at a secured creditor's sale which sale Lender may postpone from time to time to the extent permitted by law, all as Lender deems advisable, for cash or credit; provided, however that Borrower shall be credited with the net proceeds of such sale only when such proceeds are finally collected by Lender and the Borrower shall pay any deficiency on demand.  Lender may become the purchaser at any such sale and Lender may, in lieu of actual payment of the purchase price, offset the amount thereof against the Obligations.  Lender may comply with any applicable state or federal law requirements in connection with a disposition of Personal Property Collateral and compliance will not be considered adversely to affect the commercial reasonableness of such disposition.  In any sale, Lender may specifically disclaim any warranties of title or the like;

(v)    Use or transfer, without charge or liability to Borrower therefor, any of Borrower's General Intangibles, Records, surveys, engineering plans, trade names, trademarks, licenses, certificates of authority or advertising materials in advertising for sale and selling of the Personal Property Collateral.

(vi)    Borrower recognizes that in the event of a Default, no remedy of law will provide adequate relief to Lender, and therefor Borrower agrees that Lender shall be entitled to temporary and permanent injunctive relief to cure any such Default without the necessity of proving actual damages.

(vii)    All of Lender's aforesaid rights and remedies are cumulative and non-exclusive.  All expenses (including receiver's fees, counsel fees, costs and agent's compensation) incurred pursuant to the powers contained in this Section shall be secured hereby.

(viii)    At any secured creditor's sale, any combination, or all, of the Personal Property Collateral, may be offered for sale for a single price, and the proceeds of such sale may be accounted for in one account without distinction between the items of security and without assigning to them any proportion of such proceeds, Borrower hereby waiving the application of any doctrine of marshalling.

(ix)  Borrower agrees that whenever notification with respect to the sale or other disposition of any Personal Property Collateral is required by law, such notification of the time and place of public sale or the date after which a private sale or other intended disposition is to be made, shall be deemed reasonable if given in writing at least ten (10) days before the time of such public sale, or on or before the date after which any such private sale or other intended disposition is to be made, as the case may be and expenses of retaking, holding, preparing for sale, selling or the like, shall include Lender's reasonable attorneys' fees and legal expenses.

9.     **MISCELLANEOUS.**

a.     The Borrower agrees to pay ON DEMAND all expenses of Lender in connection with the administration, default or collection of the Obligations, including, without limitation: (i)  costs incurred with any examination of the Borrower's books and records, (ii) those expenses incurred or paid to protect, preserve, collect, lease, sell, repair, improve, advertise, locate, take  possession of, liquidate or otherwise deal with any security for the Note, (iii) expenses of dealing with any person or entity in any bankruptcy proceeding, (iv) all out-of-pocket expenses incurred by the Lender for the Lender's attorney and paralegal fees, disbursements, and costs, all at such rates and with respect to such services as the Lender in its sole discretion may elect to pay (as such rates may vary from time to time during the course of the performance of such services) including the costs of attorneys who are employees of the Lender, and (v) the costs of appraisal, engineers, investment bankers, environmental consultants and other experts that may be retained by the Lender in connection with such collection efforts.  Such costs will be added to the unpaid balance of the loan.

b.     No act, failure to act or delay by Lender in exercising any right, remedy, power or privilege under this Agreement or any other agreement contemplated hereby shall operate as a waiver of any provision hereof or thereof.  No waiver on any one occasion shall be construed as a bar or waiver on any future occasion.

c.     The rights and remedies provided by this Agreement are cumulative and not exclusive of any other rights or remedies otherwise provided by agreement or law.

d.     Neither this Agreement nor any document contemplated hereby nor any provision of either can be amended, waived, discharged, terminated or modified except by writing signed by an authorized representative of Lender.

e.     This Agreement and the other documents, if any, contemplated by this Agreement constitute the entire final agreement between Lender and the Borrower and supercede any prior written or oral negotiations, understandings or agreements with respect to Lender's obligations to the Borrower.

f.     This Agreement shall bind the Borrower's heirs, assigns, successors and personal representatives and shall bind and inure to the benefit of Lender's successors and assigns.

g.     The Borrower hereby expressly waives presentment, demand for payment, notice of dishonor, protest and any and all other notices or demands in connection with the delivery, acceptance, performance, default or enforcement of this Agreement.

h.     This Agreement shall be governed by and interpreted and construed in accordance with the internal laws of the State (without regard to conflict of law rules), and the Borrower hereby consents and submits to the jurisdiction of and placement of venue in the courts of the State and of the United States of America located in the State in connection with any suit or proceedings arising under this Agreement or any other agreement contemplated hereunder.  The Borrower further agrees that service of process in any such suit or proceeding may be made by certified or registered mail, return receipt requested, directed to the Borrower at the most recent address for the Borrower on Lender's records, and service so made shall be complete five (5) days after the same shall have been so mailed.

i. THE BORROWER HEREBY VOLUNTARILY WAIVES ANY AND ALL RIGHTS, WHETHER ARISING UNDER THE LAWS OR CONSTITUTION OF THE STATE OR THE UNITED STATES, RULES OF CIVIL PROCEDURE, COMMON LAW OR OTHERWISE, TO DEMAND A TRIAL BY JURY IN ANY ACTION, LAW SUIT, PROCEEDING, COUNTERCLAIM OR ANY OTHER LITIGATION PROCEDURE BASED UPON OR ARISING OUT OF THIS AGREEMENT, ANY LOAN DOCUMENT, OR THE DEALINGS OR RELATIONSHIP AMOUNT THE PARTIES. NO PARTY TO THIS AGREEMENT SHALL SEEK A JURY TRIAL IN ANY SUCH ACTION OR SEEK TO CONSOLIDATE ANY SUCH ACTION WITH ANY OTHER ACTION OR PROCEEDINGS IN WHICH A JURY TRIAL HAS NOT BEEN OR CANNOT BE WAIVED. THE PROVISIONS OF THIS PARAGRAPH HAVE BEEN FULLY DISCUSSED BY THE PARTIES AND SHALL BE SUBJECT TO NO EXCEPTIONS. NO PARTY HAS IN ANY WAY AGREED WITH OR REPRESENTED TO ANY OTHER PARTY THAT THE PROVISIONS OF THIS PARAGRAPH WILL NOT BE FULLY ENFORCED IN ALL INSTANCES.

j. If any part of this Agreement is held by a court to be unenforceable, no other part shall be affected, and the balance of this Agreement shall remain in full force and effect.

k. All notices required or permitted to be given under this Agreement or the Note shall be in writing, personally delivered or implied by effectiveness provision below and sent by facsimile (unless otherwise required by law), and shall be effective when actually delivered or when deposited with a nationally recognized overnight courier or deposited in the United States mail, first class, postage prepaid, addressed to the party to whom the notice is to be given at the address shown above. Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. To the extent permitted by applicable law, if there is more than one Borrower, notice to any Borrower will constitute notice to all Borrowers. For notice purposes, Borrower will keep Lender informed at all times of Borrower's current address(es).

IN WITNESS WHEREOF, the parties sign, seal and deliver this Agreement as of the date first set forth above.

BORROWER

Witness as to both

PARTS FIT INDUSTRY CO.
By:_____ (SEAL)
Name: _Cheng Lo_
Title: _Pres._

By:_____ (SEAL)
Name:
Title:

Witness

LENDER
By:_____
Name: _John Young_
_Business Banking Officer_

EXHIBIT A

Complete List of Borrower Business Addresses

PARTS FIT INDUSTRY CO.
1005 REPUBLIC DRIVE UNITS- C & D ADDISON, IL 60101