**EXHIBIT 3 – GUARANTY**

 Charter One

Guarantor Name and Address:

CHENG LO
1716 COLLEGE LANE
WHEATON, IL 60189

Borrower:
**PARTS FIT INDUSTRY CO.**

Date: **09/12/2006**

Lender:

Charter One Bank, N.A.
1215 Superior Avenue
Cleveland, OH 44114

## GUARANTY

GUARANTY, dated as of the date set forth above by the Guarantor shown above (the "Guarantor") in favor of Lender shown above (the "Lender").

In consideration of the Lender's giving, in its discretion, time, credit or banking facilities or accommodations to Borrower (together with its successors, the "Customer"), the Guarantor agrees as follows:

**1. GUARANTY OF PAYMENT AND PERFORMANCE:** The Guarantor hereby guarantees to the Lender the full and punctual payment when due (whether at maturity, by acceleration or otherwise), and the performance, of all liabilities, agreements and other obligations of the Customer to the Lender, whether direct or indirect, absolute or contingent, due or to become due, secured or unsecured, now existing or hereafter arising or acquired, whether by way of discount, letter of credit, lease, loan, overdraft or otherwise, including interest accruing after the filing of a bankruptcy petition (the "Obligations"). This Guaranty is an absolute, unconditional and continuing guaranty of the full and punctual payment and performance of the Obligations and not of their collectibility only and is in no way conditioned upon any requirement that the Lender first attempt to collect any of the Obligations from the Customer or resort to any security or other means of obtaining their payment. Payments by the Guarantor hereunder may be required by the Lender on any number of occasions.

**2. UNLIMITED GUARANTY:** The liability of the Guarantor hereunder shall be unlimited.

**3. SECURITY:** This Guaranty is secured by all securities or other property belonging to the Guarantor now or hereafter held by the Lender, all deposits (general or special, time or demand, provisions or final), and any other sums credited by or due from Lender to Guarantor or subject to withdrawal by Guarantor, and by any other mortgage, security agreement, or other security document that either: (i) specifically refers to this Guaranty, or (ii) generally secures all obligations of Guarantor to the Lender.

This Guaranty, the documents evidencing the credit or banking facilities or accomodations between the lender and the customer, the foregoing documents and every other document executed in connection therewith, including any amendments, extensions, modifications, renewals, replacements or substitutions thereto, are referred to in this Guaranty as the "Loan Documents."

**4. GENERAL REPRESENTATIONS, COVENANTS AND WARRANTIES:** The Guarantor represents, covenants and warrants to and with the Lender, on a continuing basis, as follows:

(a) If the Guarantor is a corporation or other business entity, it shall at all times be duly organized, in good standing and duly qualified to do business in any applicable state or jurisdiction, shall maintain its business name as shown above and shall have the power and authority to do any act necessary or appropriate to perform its obligations under the Loan Documents, and shall have obtained and be in compliance with the terms and conditions of all governmental permits and

MWGuaranty - 03/05

approvals necessary to the conduct of the Guarantor's business. The Guarantor has authorized the transactions evidenced by the Loan Documents by all necessary corporate or other action. The Guarantor has all necessary corporate or other power to enter into such transactions, and the Loan Documents are the valid and binding obligation of the Guarantor, enforceable in accordance with their terms.

(b) The Guarantor has and shall at all times maintain and provide to the Lender upon request complete and accurate financial reports, books and records of all assets, liabilities and business affairs of the Guarantor, utilizing generally accepted accounting principles consistently applied, in a form and in such detail as shall be satisfactory to the Lender, and which are and will be true correct and complete.

(c) The Lender shall have the right to inspect the Guarantor's books, records, journals, orders, receipts, invoices and any correspondence and other data relating to the Guarantor's business or to any transactions between the parties hereto.

(d) This Guaranty relates to one or more loans for business or commercial purposes, and no part of the proceeds of the loan(s) shall be used for personal, family or household purposes;

(e) The Guarantor hereby covenants not to sell, transfer, assign or otherwise alienate any of its property or assets, other than in the ordinary course of business or with the prior written consent of the Lender.

5. **EVENTS OF DEFAULT:** The following shall be events of default under this Guaranty (each referred to herein as a "Default"):

(a) Failure by Customer, Guarantor or any co-obligor, endorser, guarantor or surety for or under any of the Obligations (each referred to herein as a "Co-Obligor"), to make full and prompt payment when due, of any amount required to be paid to Lender under any of the Loan Documents or any other agreement;

(b) Failure by Customer, Guarantor or any Co-Obligor to perform keep or observe any other term, provision, condition, covenant, agreement, warranty or representation contained in any of the Loan Documents or any other agreement with or in favor of Lender, which failure continues for ten (10) days after notice thereof by Lender to the person or entity required to perform, keep or observe such term, provision, condition, covenant, agreement, warranty or representation;

(c) If any representation, statement, report or certificate made or delivered by Customer, Guarantor or any Co-Obligor is false or incorrect in any material respect when made or delivered;

(d) If any attachment, trustee process, lien, execution, levy, injunction, or receivership issued or made against the Customer, Guarantor, any Co-Obligor or any Collateral securing the Obligations (referred to herein as "Collateral") is not removed within thirty (30) days or if any final judgment and execution issued against Customer, Guarantor or any Co-Obligor remains unsatisfied for thirty (30) days;

(e) The entry of a decree or order for relief with respect to the Customer, Guarantor or any Co-Obligor in an involuntary case under the federal bankruptcy law, as now or hereafter constituted, or any other applicable federal or state bankruptcy, insolvency or other similar law, or appointing a receiver, liquidator, trustee, custodian (or similar official) of or for the Customer, Guarantor or any Co-Obligor, or ordering the winding-up or liquidation of its affairs which is not promptly contested and released or discharged within sixty (60) days;

(f) The commencement by the Customer, Guarantor or any Co-Obligor of a voluntary case under the federal bankruptcy law, as now constituted or hereafter amended, or any other applicable federal or state bankruptcy, insolvency or other similar law, or the consent by Customer, Guarantor or any Co-Obligor to the appointment of or taking possession by a receiver, liquidator, trustee, custodian (or other similar official) of or for the Customer, Guarantor or any Co-Obligor or for any substantial part of its property, or the making by Customer, Guarantor or any Co-Obligor of any assignment for the benefit of creditors, or the insolvency or the failure of the Customer, Guarantor or any Co-Obligor generally to pay its debts as such debt become due, or the taking of action by the Customer, Guarantor or any Co-Obligor in furtherance of any of the foregoing;

(g) Loss or destruction of or substantial damage to any material portion of the Collateral;

(h) Default which has not been cured during any applicable cure period in the prompt payment, performance or observance of any term, provision, condition, covenant, warranty or representation set forth in any mortgage, lien or encumbrance affecting the Collateral, whether or not such mortgage, lien or encumbrance is senior or junior to Lender's interest therein and whether or not such mortgage, lien or encumbrance has been consented to by Lender, provided, however, that nothing herein shall be deemed to be a consent by Lender, implied or otherwise, to the granting of any mortgage, lien or encumbrance on the Collateral;

(i) Such a change in the condition or affairs (financial or otherwise) of the Customer, Guarantor or any Co-Obligor, or decline in the value of the Collateral as, in the opinion of the Lender, materially impairs the Lender's security or increases its risk or if the Lender in good faith deems itself insecure.

6. **POWERS UPON DEFAULT:** Upon the occurrence of any Default or at any time thereafter, Lender may, at its option, without notice or demand, do any one or more of the following, in addition to any other right or remedy that Lender may have at law or in equity or given to Lender under any of the Loan Documents, all of which are hereby authorized by Guarantor:

(a) Declare the Obligations immediately due and payable;

(b) Cease advancing money or extending credit to or for the benefit of the Guarantor and/or the Customer under any agreement;

(c) Set-off against any and all deposits, accounts, certificate of deposit balances, claims, or other sums at any time credited by or due from the Lender to the Guarantor and against all other property of Guarantor in the possession of Lender or under its control;

(d) Realize immediately upon any Collateral;

(e) Declare that interest shall accrue on the Obligations at a rate (the "Default Rate") equal to the lesser of (i) the sum of the applicable interest rate under the relevant Obligation, plus four percent (4%), and (ii) the maximum interest rate imposed by applicable law.

7. **COLLECTION EXPENSES:** The Guarantor agrees to pay all actual costs of collection and attempted collection, including, without limitation: (a) those expenses incurred or paid to protect, preserve, collect, lease, sell, repair, improve, advertise, locate, take possession of, liquidate or otherwise deal with any Collateral, (b) expenses of dealing with any person or entity in any bankruptcy proceeding, (c) all out-of-pocket expenses incurred by the Lender for the Lender's attorney and paralegal fees, disbursements, and costs, all at such rates and with respect to such services as the Lender in its sole discretion may elect to pay (as such rates may vary from time to time during the course of the performance of such services) including the costs of attorneys who are employees of the Lender, and (d) the costs of appraisers, engineers, investment bankers, environmental consultants and other experts that may be retained by the Lender in connection with such collection efforts. Such costs will be added to the unpaid balance of the Obligations.

8. **WAIVERS BY GUARANTOR; LENDER'S FREEDOM TO ACT:** The Guarantor agrees that the Obligations will be paid and performed strictly in accordance with their respective terms regardless of any law, regulation or order now or hereafter in effect in any jurisdiction affecting any of such terms or the rights of the Lender with respect thereto. The Guarantor waives presentment, demand, protest, notice of acceptance, notice of Obligations incurred and all other notices of any kind, all defenses which may be available by virtue of any valuation, stay, moratorium law or other similar law now or hereafter in effect, any right to require the marshalling of assets of the Customer, and all suretyship defenses generally. Without limiting the generality of the foregoing, the Guarantor agrees to the provisions of any instrument evidencing, securing or otherwise executed in connection with any Obligation and agrees that the obligations of the Guarantor hereunder shall not be released or discharged, in whole or in part, or otherwise affected by (a) the failure of the Lender to assert any claim or demand or to enforce any right or remedy against the Customer; (b) any extensions or renewals of any of the Obligations; (c) any rescissions, waivers, amendments or modifications of any of the terms or provisions of any agreement evidencing, securing or otherwise executed in connection with any of the Obligations; (d) the substitution or release of any entity primarily or secondarily liable for any of the Obligations; (e) the adequacy of any rights the Lender may have against any collateral or other means of obtaining repayment of the Obligations; (f) the impairment of any Collateral, including without limitation the failure to perfect or preserve any rights the Lender might have in such Collateral or the substitution, exchange, surrender, release, loss or destruction of any such Collateral; or (g) any other act or omission which might in any manner or to any extent vary the risk of the Guarantor or otherwise operate as a release or discharge of the Guarantor, all of which may be done without notice to the Guarantor.

9. **UNENFORCEABILITY OF OBLIGATIONS AGAINST CUSTOMER:** If for any reason the Customer has no legal existence or is under no legal obligation to discharge any of the Obligations, or if any of the Obligations have become irrecoverable from the Customer by operation of law or for any other reason, this Guaranty shall nevertheless be binding on the Guarantor to the same extent as if the Guarantor at all times had been the principal obligor on all such Obligations. In the event that acceleration of the time for payment of the Obligations is stayed upon the insolvency, bankruptcy or reorganization of the Customer, or for any other reason, all such amounts otherwise subject to acceleration under the terms of any agreement evidencing, securing or otherwise executed in connection with any Obligation shall be immediately due and payable by the Guarantor.

Page 4

**10. SUBROGATION; SUBORDINATION:** Until the payment and performance in full of all Obligations, the Guarantor shall not exercise any rights against the Customer arising as a result of payment by the Guarantor hereunder, by way of subrogation or otherwise, and will not prove any claim in competition with the Lender in respect of any payment hereunder in bankruptcy or insolvency proceedings of any nature; the Guarantor will not claim any set-off or counterclaim against the Customer in respect of any liability of the Guarantor to the Customer; and the Guarantor waives any benefit of and any right to participate in any collateral which may be held by the Lender. The payment of any amounts due with respect to any indebtedness of the Customer now or hereafter held by the Guarantor is hereby subordinated to the prior payment in full of the Obligations, provided that so long as no default in the payment or performance of the Obligations has occurred and is continuing, or no demand for payment of any of the Obligations has been made that remains unsatisfied, the Customer may make, and the Guarantor may demand and accept, any scheduled payments of principal of and interest on such subordinated indebtedness in the amounts, at the rates and on the dates specified in such instruments, securities or other writings as shall evidence such subordinated indebtedness. The Guarantor agrees that after the occurrence of any default in the payment or performance of the Obligations, the Guarantor will not demand, sue for or otherwise attempt to collect any such indebtedness of the Customer to the Guarantor until the Obligations shall have been paid in full. If, notwithstanding the foregoing sentence, the Guarantor shall collect, enforce or receive any amounts in respect of such indebtedness, such amounts shall be collected, enforced and received by the Guarantor as trustee for the Lender and be paid over to the Lender on account of the Obligations without affecting in any manner the liability of the Guarantor under the other provisions of this Guaranty.

**11. TERMINATION; REINSTATEMENT:** This Guaranty shall remain in full force and effect until the Lender is given written notice of the Guarantor's intention to discontinue this Guaranty, notwithstanding any intermediate or temporary payment or settlement of the whole or any part of the Obligations. No such notice shall affect any rights of the Lender, with respect to Obligations incurred prior to a date that is ten (10) business days after the actual receipt of such notice ("Revocation Effective Date") or Obligations incurred pursuant to any contract or commitment in existence prior to such receipt, and all checks, drafts, notes, instruments (negotiable or otherwise) and writings made by or for the account of the Customer and drawn on the Lender or any of its agents purporting to be dated on or before the Revocation Effective Date, although presented to and paid or accepted by the Lender after that date, shall form part of the Obligations. This Guaranty shall continue to be effective or be reinstated, notwithstanding any such notice, if at any time any payment made or value received with respect to an Obligation is rescinded or must otherwise be returned by the Lender upon the insolvency, bankruptcy or reorganization of the Customer, or otherwise, all as though such payment had not been made or value received.

Any notice of revocation must be hand delivered or sent by certified U.S. mail, return receipt requested, in either case to the address set forth above or another address established by Lender under **Section 19.**

**12. MULTIPLE GUARANTORS:** In the event that the word "Guarantor" refers to more than one person or entity, all representations and obligations under this Guaranty shall be joint and several.

**13. LENDER'S RIGHTS:** The Lender shall not be deemed to have waived any of its rights under this Guaranty or otherwise unless such waiver is in writing and signed by the Lender. Lender's failure to require strict performance of the terms, covenants and agreements of this Guaranty or any other of the Loan Documents, or any delay or omission on the part of the Lender in exercising any right, or any acceptance of partial or adequate payment or performance shall not waive, affect or diminish such right or Guarantor's duty of compliance and performance therewith. A waiver on any one occasion shall not be construed as a bar to or waiver of the same or any other right on the same or any future occasion. All rights and remedies of the Lender under this Guaranty or any other of the Loan Documents, shall be cumulative and may be exercised singularly or concurrently. The Obligations may be negotiated, extended or renewed by the Lender without releasing the Guarantor or any Co-Obligor.

**14. SURVIVAL OF REPRESENTATIONS:** All representations and warranties of Guarantor, and all terms, provisions, conditions and agreements to be performed by Guarantor contained herein shall be true and satisfied at the time of the execution of this Guaranty, and shall survive the closing hereof and the execution and delivery of this Guaranty.

**15. GOVERNING LAW; JURISDICTION; SEVERABILITY:** This Guaranty is accepted by Lender in the state set forth in Lender's address above (the "State"). This Guaranty shall be construed in all respects in accordance with, and governed by, the internal laws of the State. Wherever possible, each provision of this Guaranty shall be interpreted in such manner as to be effective and valid under applicable law, but if any provisions of this Guaranty shall be prohibited by or invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Guaranty. Guarantor hereby irrevocably consents to the jurisdiction of the courts of the State (and of

the federal courts located in the State) for the resolution of any action brought with respect to this Guaranty or the Obligations. Guarantor agrees that service of process in any such action may be made on Guarantor by U.S. mail, certified, return receipt requested, at Guarantor's address set forth above. Guarantor waives any objection to service of process, jurisdiction or venue in any action brought in conformity with this section.

**16. MODIFICATION:** This Guaranty may not be altered or amended except by an agreement in writing signed by both Lender and Guarantor.

**17. APPLICATION OF PAYMENT:** Guarantor irrevocably waives the right to direct the application of any and all payments at any time or times hereafter received by Lender from Guarantor, or from any other source, and Guarantor does hereby irrevocably agree that Lender shall have the continuing exclusive right to apply and reapply any and all payments received at any time or times hereafter against the Obligations in such manner as Lender may deem advisable.

**18. SECTION TITLES:** The section titles contained in this Guaranty are for convenience only and shall not affect the construction or meaning of this Guaranty.

**19. NOTICES:** All notices and other communications required or permitted under this Guaranty shall be in writing and shall be personally delivered or given by facsimile, or by registered or certified mail. Except for notices of revocation of this Guaranty, any such notice shall be deemed effective on the earlier of (a) the time when such notice is actually received or (b) when deposited in the United States mail, postage prepaid and addressed as set forth at the beginning of this document. Any notice of revocation of this Guaranty must be given in accordance with **Section 11**.

Any party may change the address to which its future notices shall be sent by notice given as provided above, to be effective upon receipt.

**20. ASSIGNMENT; SUCCESSORS AND ASSIGNS:** Guarantor shall not be entitled to assign any of its rights or obligations under this Guaranty without Lender's prior written consent. Lender shall be entitled to assign some or all of its rights under this Guaranty without notice to or consent of Guarantor. This Guaranty shall be binding upon and inure to the benefit of Lender, Guarantor and their respective successors, assigns, trustees, receivers, administrators, personal representatives, legatees and devisees.

**21. WAIVER OF JURY TRIAL:** LENDER AND GUARANTOR EXPRESSLY AND VOLUNTARILY WAIVE ANY AND ALL RIGHTS, WHETHER ARISING UNDER THE UNITED STATES OR ANY STATE CONSTITUTION, ANY RULES OF CIVIL PROCEDURE, COMMON LAW OR OTHERWISE, TO DEMAND A TRIAL BY JURY IN ANY ACTION, LAWSUIT, PROCEEDING, COUNTERCLAIM OR ANY OTHER LITIGATION PROCEDURE BASED UPON, OR ARISING OUT OF, THIS GUARANTY OR THE LOAN DOCUMENTS, ANY AGREEMENTS ARISING UNDER OR RELATING TO THIS GUARANTY, ANY COLLATERAL SECURING THE OBLIGATIONS, OR THE DEALINGS OR RELATIONSHIPS BETWEEN OR AMONG LENDER AND GUARANTOR OR ANY OF THEM . NEITHER LENDER NOR GUARANTOR, INCLUDING ANY ASSIGNEE OR SUCCESSOR OF LENDER OR GUARANTOR, SHALL SEEK A JURY TRIAL IN ANY SUCH ACTION. NEITHER LENDER NOR GUARANTOR SHALL SEEK TO CONSOLIDATE ANY SUCH ACTION WITH ANY OTHER ACTION WHEN A JURY TRIAL CANNOT BE OR HAS NOT BEEN WAIVED. THESE PROVISIONS SHALL BE SUBJECT TO NO EXCEPTIONS. NEITHER LENDER NOR GUARANTOR HAS IN ANY WAY AGREED WITH OR REPRESENTED TO THE OTHER THAT THE PROVISIONS OF THIS PARAGRAPH WILL NOT BE FULLY ENFORCED IN ALL INSTANCES.

_____
Witness

GUARANTOR SIGNATURE

_____
CHENG LO

# EXHIBIT 4 –
# NOTICE OF DEFAULT, DEMAND FOR PAYMENT, RESERVATION OF RIGHTS

LAW OFFICES
# SIMON, GALASSO & FRANTZ, LLC
111 EAST WACKER DRIVE SUITE 2606
CHICAGO, ILLINOIS 60601
Telephone 312-228-0550
Facsimile 312-228-0549
www.sgfattorneys.com

Dean J. Groulx Esq.
dgroulx@sgfattorneys.com

Admitted to Practice in
Illinois and Michigan

October 9, 2009

**Via Certified Mail,**
**Return Receipt Requested,**
**And First Class Mail Service**

Parts Fit Industry, Inc.
1005 Republic Drive
Units C&D
Addison, IL 60101

Mr. Cheng Lo
1716 College Lane
Wheaton, IL 60189

Re: RBS Citizens Bank d/b/a Charter One (the "Bank") Loan to Parts Fit Industry, Inc. ("Borrower") and Cheng Lo ("Personal Guarantor"), as evidenced by a Commercial Line Note, dated 09/12/2006; a Business Loan and Security Agreement, dated 09/12/2006; a Guaranty, dated 09/12/2006; a Subordination Agreement(s), dated 09/12/2006; and other agreements and documents related thereto (collectively, "Loan").

## NOTICE OF DEFAULT, DEMAND FOR PAYMENT, RESERVATION OF RIGHTS

Dear Borrower and Guarantor:

We represent RBS Citizens, N.A. d/b/a Charter One Bank ("Bank"). The Loan is in default. The Borrower and Personal Guarantor have failed to pay when due the principal and interest payments due on or before August 12, 2009, and September 12, 2009, respectively. Irrespective of a default, the Note is also payable "on demand."

**The Bank is hereby declaring all obligations under the Loan due and payable. Demand is hereby made that that all amount due under the Loan be paid in full no later than October 19, 2009, at 3:00 PM (Central Time) and that proof of payment be submitted to this office within 72-hours thereof. This demand is directed to the Borrower and the Personal Guarantor, jointly and severally.**

As of October 9, 2009, the outstanding principal balance of the Loan is $313,188.41, and accrued but unpaid interest is $3,290.65, and a late charge of $780.96. This does not include interest at the default rate or all costs of collection, including attorneys' fees and costs. Please contact the undersigned for the payoff amount of the Loan.

Failure of the Bank to exercise any of its rights on account of default under the Loan shall not be deemed or construed to constitute a cure or waiver of default, a waiver of Bank's right to make demand for payment in full, or a

SIMON, GALASSO & FRANTZ, LLC
Page 2 of 2

modification or waiver of any of the Bank's rights and remedies under the Loan or at law. The Bank has not agreed to forbear from exercising any of its rights and remedies, but rather reserves the right to take such action at such time as the Bank deems necessary and appropriate in order to protect its interests, except as otherwise stated in this letter. The Bank hereby expressly reserves all of its rights and remedies in this matter (including, but not limited to, interest at the default rate, and all costs of collection, including attorneys' fees and expenses), and confirms that the terms and conditions of the Loan remain in full force and effect.

Should you have any questions, please feel free to contact the undersigned. Thank you for your anticipated cooperation in this matter.

Very truly yours,

Dean J. Groulx

Cc: Citizens Bank, NA d/b/a Charter One Bank

**EXHIBIT 5 – UCC FINANCING STATEMENT**

PARTS FIT IND

RECEIVED
IL SECRETARY OF STATE
UNIFORM COMMERCIAL CODE
20060926  1556
$20.00  Electronic

**UCC FINANCING STATEMENT**
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

11377009   FS

**A. NAME & PHONE OF CONTACT AT FILER [optional]**
Diligenz   (800)858-5294

**B. SEND ACKNOWLEDGMENT TO: (Name and Address)**
Diligenz, Inc.
6500 Harbour Heights Pkwy #400
Mukilteo, WA, 98275

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

1a. ORGANIZATION'S NAME: PARTS FIT INDUSTRY CO.

1c. MAILING ADDRESS: 1005 REPUBLIC DRIVE UNITS C&D
CITY: ADDISON
STATE: IL
POSTAL CODE: 60101
COUNTRY: USA

1d. SEE INSTRUCTIONS
1e. TYPE OF ORGANIZATION: CORPORATION
1f. JURISDICTION OF ORGANIZATION: IL
1g. ORGANIZATION ID #: 59613634

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

(blank)

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

3a. ORGANIZATION'S NAME: CHARTER ONE BANK N.A.

3c. MAILING ADDRESS: 1215 SUPERIOR AVENUE
CITY: CLEVELAND
STATE: OH
POSTAL CODE: 44114
COUNTRY: USA

**4. This FINANCING STATEMENT covers the following collateral:**

ALL INVENTORY, CHATTEL PAPER, ACCOUNTS, EQUIPMENT AND GENERAL INTANGIBLES: WHETHER ANY OF THE FOREGOING IS OWNED NOW OR ACQUIRED LATER; ALL ACCESSIONS, REPLACEMENTS AND SUBSTITUTIONS RELATING TO ANY OF THE FOREGOING; ALL RECORDS OF ANY KIND RELATING TO ANY OF THE FOREGOING; ALL PROCEEDS RELATING TO ANY OF THE FOREGOING; (INCLUDING INSURANCE, GENERAL INTANGIBLES AND OTHER PROCEEDS).

5. ALTERNATIVE DESIGNATION (if applicable): ☐ LESSEE/LESSOR ☐ CONSIGNEE/CONSIGNOR ☐ BAILEE/BAILOR ☐ SELLER/BUYER ☐ AG. LIEN ☐ NON-UCC FILING

6. ☐ This FINANCING STATEMENT is to be filed (for record) (or recorded) in the REAL ESTATE RECORDS. Attach Addendum (if applicable)
7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [optional] ☐ ALL DEBTORS ☐ DEBTOR 1 ☐ DEBTOR 2

8. OPTIONAL FILER REFERENCE DATA
800-8380910-0101  APP 7828803 [21698029]

FILING OFFICE COPY - UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)