UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DISTRICT

| | |
|---|---|
| RBS CITIZENS, N.A. d/b/a CHARTER ONE BANK, a National Banking Association,<br><br>Plaintiff,<br><br>- vs -<br><br>PARTS FIT INDUSTRY CO., an Illinois corporation, and CHENG LO, an Illinois citizen,<br><br>Defendants. | Case No. 1:10-cv-00769<br>Hon. Matthew F. Kennelly |

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S EMERGENCY MOTION
FOR
ORDER DIRECTING DEFENDANTS TO SURRENDER COLLATERAL
TO PLAINTIFF
OR, IN THE ALTERNATIVE,
FOR THE APPOINTMENT OF A RECEIVER**

Plaintiff, RBS Citizens, N.A. d/b/a Charter One Bank ("Lender"), by and through its undersigned attorneys, submits the following Memorandum of Law in support of its Emergency Motion for Order Directing the Defendants to Surrender Collateral Or, in the Alternative, for the Appointment of a Receiver.

### INTRODUCTION

The Defendants, Parts Fit Industry, Inc. (Borrower') and its sole-owner and operator, Cheng Lo ("Guarantor"), granted the Lender a first-priority security interest in all of the assets of the Borrower as collateral security for the repayment of a $400,000.00 commercial line of credit the Borrower obtained from Lender. The line of credit, which is payable "on demand," has been called, and the defendants are in default. Despite pledging the Borrower's assets as collateral for the line of credit, the Guarantor refuses to

1

surrender the Borrower's assets to the Lender. In addition, it appears as if the Borrower and Guarantor are in the process of disposing of the Borrower's assets and paying junior, unsecured creditors with the sale proceeds. The Guarantor, who has ties and conducts business in Taiwan, has threatened to hide and conceal the assets of the Borrower and to flee to Taiwan if the Lender enforces the Loan Documents or attempts to take possession of the collateral.

As a secured creditor, Lender is entitled to take immediate possession of the collaterals and to sell, lease or dispose of the collateral in a commercially reasonable manner in order to satisfy all or part of the Borrower and the Guarantor's obligations to the Lender. If the defendants are not ordered to immediately surrender the collateral to the Lender and are not enjoined from disposing of the collateral, the Lender's security interest will be impaired and the value of the collateral substantially diminished.

## BACKGROUND

Borrower obtained a $400,000.00 commercial line of credit through the Lender. (*See* Verified Complaint at ¶ 7; Commercial Line Note attached Exhibit 1 to Verified Complaint (hereinafter, "Note.") Borrower signed a Business Loan and Security Agreement, granting the Lender a security interest in the Borrower's assets, including inventory, accounts, equipment, and general intangibles. (*See* Verified Complaint at ¶ 8; Business Loan and Security Agreement attached as Exhibit 2 to Verified Complaint.) The Lender perfected it security interest. (*See* Verified Complaint at ¶ 23; UCC Financing Statement attached as Exhibit 5 to Verified Complaint.)

The Commercial Line Note is "payable on demand." (*See* Verified Complaint at ¶ 10; Note, at p. 5, *Events of Default*.) The Lender has called the Note and demanded

immediate payment in full of the Borrower and the Guarantor's obligations to the Lender. (*See* Verified Complaint at ¶ 11; Notice of Default, Demand for Payment, Reservation of Rights attached as Exhibit 4 to the Verified Complaint.) Despite demand, the Borrower and the Guarantor have not satisfied all or part of their obligations to the Lender. (*See* Verified Complaint at ¶ 12.)

The Borrower and the Guarantor are presently indebted to the Lender for $318,130.14. (*See* Verified Complaint at ¶ 13.) This does not include interest at the default rate or costs of collection. *Id.*

Independently, the Borrower and the Guarantor are in "default." Events of Default under the Note include the failure to "make full and prompt payment when due, of any amount required to be paid to Lender under the Loan Documents or any other agreement." (*See* Verified Complaint at ¶ 16; Note, at p. 5, *Events of Default* (1)). The Borrower and Guarantor have failed to make the monthly payments due under the Note and the other Loan Documents on 08/12/09; 09/12/09; 10/12/09; 11/12/09; 12/12/09; and 01/12/10. (*See* Verified Complaint at ¶ 17.) Therefore, the Borrower and Guarantor are in default.

The Borrower granted the Lender a security interest in the Borrower's accounts, equipment, general intangibles, inventory, records, fixtures, goods, furniture, chattel paper, and instruments ("Collateral"), as more specifically described in the Business Loan and Security Agreement, as collateral security for the performance of Borrower's obligations to Lender under the Note. (*See* Verified Complaint at ¶¶ 8 and 22; Business Loan and Security Agreement at §§ 1(c) and 8.)

3

The Borrower and Guarantor's failure to make payments when due under the Note and the Loan Documents constitutes an event of default under the Business Loan and Security Agreement. (*See* Verified Complaint at ¶ 25; Business Loan and Security Agreement, at p. 7, § 6 – *Events of Default* (1).) The Borrower has failed to satisfy the obligation due the Lender when the Lender called the Note and demanded payment in full. In addition, the Borrower has failed to make regular periodic payments on the 12th of the month, from August 12, 2009, through at least January 12, 2010.

The Business Loan and Security Agreement provides, at § 8(d), p. 11, that upon default, Lender shall have the following "powers":

> d. **Additional Powers Upon Default.** In addition to powers provided above, upon the occurrence of any Default or at any time thereafter, Lender may, at its option, without notice or demand, do any one or more of the following, in addition to any other right or remedy that Lender may have at law or in equity or given to Lender under any of the Loan Documents, all of which are hereby authorized by Borrower:
>
> (i) Exercise all of the remedies of a secured creditor under the Uniform Commercial Code as now or hereafter in effect in the State, and such further remedies as may from time to time hereafter be provided for a security party;
>
> (ii) Take possession of the [Collateral], or any part thereof, and perform any acts Lender deems necessary or proper to conserve the [Collateral], and collect, receive and enforce all Accounts, General Intangibles, and proceeds and profits thereof, including those past due as well as those accruing thereafter, and use, manage, operate and control the [Collateral], collect the Accounts, General Intangible, proceeds and profits thereof and apply same as the court may direct. The expense (including receiver's fees, counsel fees, costs and agent's compensation) incurred pursuant to the powers herein contained shall be added to the Obligations secured hereby. Lender shall (after payment of all costs and expenses incurred) apply such proceeds and profits received by it on the Obligations

4

in such order as Lender determines, Lender shall be liable to account only for such proceeds and profits as are actually received by Lender;

(iii) Cure any default for the account of Borrower, and, to the fullest extent permissible under law, apply any funds credited by or due from Borrower to Lender against the same (without any obligation first to enforce any other rights of the Lender, including, without limitation, any rights under the Loan Documents or this Agreement, or any guarantee thereof, and without prejudice to any such rights). Without limiting the generality of the foregoing, Borrower hereby authorizes Lender to pay all taxes, with interest, costs and charges accrued thereon, which may at any time be a lien upon the [Collateral], or any part thereof; to pay the premiums for any insurance required hereunder; to incur and pay reasonable expenses in protecting its rights hereunder and the security hereby granted; to pay any balance due under any security agreement on any fixtures or equipment included as part of the [Collateral]; and payment of all amounts so incurred shall be secured hereby as fully and effectually as any other obligation of Borrower secured hereby and shall bear interest until paid at the highest rate applicable to the Borrower's Obligations. To the fullest extent permissible under law, Lender may apply to any of these purposes or to the repayment of any amounts so paid by Lender any sums paid under the Loan Documents or this Agreement by Borrower as interest or otherwise;

(iv) Sell or otherwise dispose of the [Collateral] (in its then condition or after repair, further construction and/or preparation thereof, and Lender shall have no obligation to make such repair, construction and/or preparation, utilizing in connection therewith any of the Borrower's assets, without charge or liability to Borrower therefore) at a secured creditor's sale which sale Lender may postpone from time to time to the extent permitted by law, all as Lender deems advisable, for cash or credit; provided, however that Borrower shall be credited with the net proceeds of such sale only when such proceeds are finally collected by Lender and the Borrower shall pay any deficiency on demand. Lender may become the purchase at any such sale and Lender may, in lieu of actual payment of the purchase price, offset the amount thereof against the Obligations. Lender may comply with any applicable state

5

or federal law requirements in connection with a disposition of [Collateral] and complain will not be considered adversely to affect the commercial reasonableness of such disposition. In any sale, Lender may specifically disclaim any warranties of title or the like;

(v) Use or transfer, without charge or liability to Borrower therefore, any of Borrower's General Intangibles, Records, surveys, engineering plans, trade names, trademarks, licenses, certificates of authority or advertising materials in advertising for sale and selling of the [Collateral].

(vi) Borrower recognizes that in the event of a default, no remedy of law will provide adequate relief to Lender, and therefore Borrower agrees that Lender shall be entitled to temporary and permanent injunctive relief to cure any such default without the necessity of proving actual damages;

(vii) All of Lender's aforesaid rights and remedies are cumulative and non-exclusive. All expenses (including receiver's fees, counsel fees, costs and agent's compensation) incurred pursuant to the powers contained in this Section shall be secured hereby.

(viii) At any secured creditor's sale, any combination, or all, of the [Collateral], may be offered for sale for a single price, and the proceeds of such sale may be accounted for in one account without distinction between the items of security and without assigning to them any proportion of such proceeds, Borrower hereby waiving the application of any doctrine of marshalling.

(ix) Borrower agrees that whenever notification with respect to the sale or other disposition of any [Collateral] is required by law, such notification of the time and place of public sale or the date after which a private sale or other intended disposition is to be made, shall be deemed reasonable if given in writing at least ten (10) days before the time of such public sale, or on or before the date after which any such private sale or other intended disposition is to be made, as the case may be and expense of retaking, holding, preparing for sale, selling or the like, shall include Lender's reasonable attorneys' fees and legal expense.

6

Lender has demanded that the Borrower surrender the Collateral to the bank. The Borrower has refused. (*See* Verified Complaint at ¶ 29.) On information and belief, the Borrower has been disposing of the Collateral without Lender's prior knowledge or authorization and without accounting to Lender for the sale proceeds. (*See* Verified Complaint at ¶ 30.) For instance, on information and belief, last week, the Borrower sold tire axles for roughly $20,000.00 and then applied the proceeds to an unsecured trades payable. (*See* Verified Complaint at ¶ 31.) The Guarantor, who owns and operates the Borrower, has threatened to dispose of the Collateral and flee to Taiwan. (*See* Verified Complaint at ¶ 32.)

The Business Loan and Security Agreement provides that "[t]he Borrower shall not sell, lease or transfer any of the [Collateral] or any interest therein without the prior written consent of the Lender, except for sales or leases of inventory in the ordinary course of business on usual trade terms, which shall not include a transfer in partial or total satisfaction of debt." (*See* Business Loan and Security Agreement at p. 10, § 8(c)(vii).)

The Guarantor has negotiated a deal in principle to sell the Collateral to a third-party for approximately $210,000.00, subject to Lender waiving any deficiency. (*See* Verified Complaint at ¶ 32.) When Lender indicated that it would not agree to waive any deficiency, the Guarantor, on his own behalf and on behalf of the Borrower, threatened to "blow up" the deal and then proceeded to begin disposing of the Collateral without Lender's prior knowledge or authorization. (*See* Verified Complaint at ¶ 32.)

## ARGUMENT

### I. LENDER IS ENTITLED TO IMMEDIATE POSSESSION OF THE COLLATERAL.

#### A. By Express Agreement, the Borrower Agreed to Surrender the Collateral to the Lender Upon Default.

It is beyond cavil that the defendants are in default. The Note is "payable on demand." The Lender has called the Note and demanded immediate payment in full of the Borrower's obligations to the Lender. The failure to satisfy the obligation upon demand is an event of default under both the Note and the Business Loan and Security Agreement. Independently, the Borrower has failed to make regular, periodic payments each month, from August 12, 2009, through January 12, 2010.

When the language of a contract is clear and unambiguous, "the plain language of the contract controls and it must be enforced as written." *Georgia-Pacific v. First Wisconsin Financial,* 805 F. Supp. 610, 615 (N.D. Ill. 1992). "When a contract is unambiguous on its face, the meaning of the document and intentions of the parties must be gathered from the face of the instrument without the assistance of parol or extrinsic evidence." *Id.* (citations omitted).

In this case, the language of the Loan Documents is clear and unambiguous. Upon default, the Borrower agreed that the Lender had the right "to take possession of the [Collateral] …."and that the Lender could exercise all rights of secured creditor under the Uniform Commercial Code.

Under the Illinois Uniform Commercial Code, Lender, upon the Borrower's default is entitled to, among other remedies: (i) take possession of the Collateral. 810 ILCS 5/9-609(a)(1); (ii) require the Borrower to assemble the Collateral and make it

8

available to Lender at a place to be designated by Lender which is reasonably convenient to both parties. 810 ILCS 5/9-609(c); (iii) sell, lease, license, or otherwise dispose of any or all of the Collateral in its present condition or following any commercially preparation or processing. 810 ILCS 5/9-610(a); and (iv) dispose of the Collateral by public or private proceedings. 810 ILCS 5/9 610(b).

The Borrower appears to be in the process of disposing of the Collateral, despite a provision in the Business Loan and Security Agreement prohibiting the Borrower from selling, leasing or transferring the Collateral (except for inventory in the ordinary course and on usual terms) without the Lender's prior written consent. (*See* Business Loan and Security Agreement at p. 10, § 8(c)(vii).) The Borrower also agreed to a temporary and permanent injunction to cure any default by express operation of the Business Loan and Security Agreement. (*See, e.g.*, Business Loan and Security Agreement, p. 11, at § 8(d)(vi).)

### B. The Appointment of a Receiver is Warranted.

In the absence of an order for possession of the collateral and accompanying injunction, the appoint of a receiver is both necessary and warranted. "The appointment of a receiver is a diversity case is a procedural matter governed by federal law and federal equitable principles." *Aviation Supply Co. v. R.S.B.I. Aerospace, Inc.*, 999 F.2d 314, 316 (8th Cir. 1993). Appointment of a receiver is an extraordinary remedy and the court should exercise its discretion to appoint one with "care and caution." *Connolly v. Gishwiller*, 162 F.2d 428, 435 (7th Cir. 1947). It is the burden of the party seeking the appointment of a receiver to establish that the appointment is warranted. 65 Am.Jur.2d *Receivers* § 20.

9

In this case, the Lender has satisfied its burden. The language of the Loan Documents is clear and unambiguous that the Borrower has consented in advance to the appointment of a receiver, at its expense, to take possession of, collect and dispose of the Collateral. (*See* Business Loan and Security Agreement, at p. 11, §8(d)(ii).) As stated earlier, if an agreement is clear and unambiguous, it must be enforced as written. *Georgia-Pacific, supra.*

Even in the absence of such a bargained-for contractual right, Lender believes that the appointment of a receiver, at the Borrower's expense, is appropriate under the circumstances of this case. Factors that have been considered in the appointment of a receiver include the following: (1) fraudulent conduct on the part of the defendant; (2) the imminent danger of the property being lost, concealed, injured, diminished in value, or squandered; (3) the inadequacy of the available legal remedies; (4) the probability that harm to plaintiff by denial of the appointment would be greater than the injury to the parties opposing the appointment; and (5) plaintiff's probable success in the action and the possibility of irreparable injury to his interests in the property. *Aviation Supply, supra,* 999 F.2d 316-317.

When taking these factors into an account in this instance, the appointment of a receiver is justified. The Borrower is disposing of the Collateral, despite prohibitions and limitations on such in the Loan Documents, and threatening to "flee" to Taiwan. Despite a deal to sell the Collateral to satisfy roughly 70% of the Borrower's obligation to the Lender, the Borrower is threatening to kill the deal because the Lender will not waive or forgive the deficiency.

There is imminent danger that the Collateral will be lost, concealed or diminished

10

in value as a result of the Borrower's actions. Legal remedies are inadequate to protect the Lender's interests, in this instance, given that the Collateral is necessary to secure and satisfy the Borrower's obligations to the Lender.

On balance, the harm to the Lender in the absence of a receiver is greater than any potential injury to the Borrower if a receiver is appointed. The Borrower agreed by contract that the Lender may appoint a receiver to take possession and dispose of the Collateral. There is no harm to the Borrower in enforcing a provision to a contract to which it (the Borrower) freely and voluntarily agreed. The Lender, on the other hand, faces actual harm from the Borrower's actions. The Lender's security interest is being impaired and the value of its Collateral diminished.

Lastly, Lender has demonstrated a high probability of success in the action. The Note is "payable on demand." The Lender has called the Note and demanded immediate and full payment of the Borrower's obligations to the Lender. There is no legally cognizable defense to the action under these circumstances except payment in full of the obligation. Independently, the Borrower is in default. It has not made a payment on the line of credit since August, 2009.

Further, secured creditors "clearly have an interest in the property on which they have a security interest that may provide a basis for convincing the court to appoint a receiver ending a foreclosure suit or any other action to enforce one or more outstanding liens." 12 Wright & Miller § 2983 at 21; *see also Pusey & Jones Co. v. Hanssen*, 261 U.S. 491, 497 (1923),(stating that "[a] receiver is often appointed upon application of a secured creditor who hears that his security will be wasted").

11

## CONCLUSION

For the foregoing reasons, Charter One Bank respectfully requests that the Court grant its emergency motion for an order directing the defendants to immediately surrender the Collateral to the bank and enjoining the defendants from selling, leasing, transferring or otherwise disposing of the collateral or, in the alternative, for the appointment of a receiver.

                                          Respectfully submitted,

                                          /s/Dean J. Groulx
                                          Simon, Galasso & Frantz, LLC
                                          111 E. Wacker Drive, Suite 2606
                                          Chicago, IL 60601
                                          (312) 228-0550 - Office
                                          (312) 228-0549 - Facsimile
                                          dgroulx@sgfattorneys.com
                                          ARD# 6291336
                                          Attorneys for Charter One Bank

Date: February 4, 2010